**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

PARKER MADISON PARTNERS,
individually and on behalf of all others similarly
situated,

                Plaintiff,

   -against-

AIRBNB, INC.,

            Defendant.

Case No: 16-cv-08939 (VSB)

*ORAL ARGUMENT REQUESTED*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**NEWMAN FERRARA LLP**
Lucas A. Ferrara
Jeffrey M. Norton
1250 Broadway, 27th Fl.
New York, New York 10001
(212) 619-5400

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ......................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 2

III.    SUMMARY JUDGMENT STANDARD ....................................................... 3

IV.     ARGUMENT AND AUTHORITIES ............................................................. 4

        A.  Introduction ...................................................................................... 4

        B.  The Plain Language of NYRPL § 440, *et seq.* Requires Airbnb to Have
            a Broker's License ............................................................................ 5

        C.  Bringing Together Hosts and Guests to Facilitate Apartment Rentals
            Requires Airbnb to Have a Real Estate Broker's License ...................... 7

        D.  Accepting a Fee that is Contingent on the Amount of Rent Charged
            Requires Airbnb to Have a Broker's License .......................................... 8

        E.  Airbnb's Performance of Ancillary Services for Hosts and Guests
            Requires Airbnb to Have a Broker's License .......................................... 9

        F.  Summary Judgement Against Airbnb is Appropriate ........................... 10

V.      CONCLUSION ........................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Prop. Consultants, Ltd. v. Walden Lisle Assocs.*,
    1997 WL 394617 (S.D.N.Y. July 14, 1997) ............................................................. 6

*City Ctr. Real Estate, Inc. v. Berger*,
    39 A.D.3d 267 (1st Dep't 2007) ............................................................................. 5

*Inclan v. N.Y. Hospitality Grp., Inc.*,
    2015 WL 1399599 (S.D.N.Y. Mar. 26, 2015) ...................................................... 4,6

*Ling's Properties, LLC v. Bode*,
    94 A.D.3d 951 (2d Dep't 2012)............................................................................... 1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................................... 3-4

*Matter of Wertlieb*,
    165 A.D.2d 644 (1st Dep't 1991) ........................................................................... 6

*Meltzer v. Crescent Leaseholds, Ltd.*,
    315 F. Supp. 142 (S.D.N.Y. 1970), *aff'd*, 442 F.2d 293 (2d Cir. 1971) ................... 6

*Northeast General Corp. v. Wellington Advertising, Inc.*,
    82 N.Y.2d 158 (1993) ............................................................................................

*People v. Biss*,
    81 Misc. 2d 339, 365 N.Y.S.2d 983 (Crim. Ct. 1975) ............................................ 7

*People v. Sickinger*,
    79 Misc. 2d 572, 360 N.Y.S.2d 796 (Crim. Ct. 1974)......................................... 6,7

*PrinceRidge Grp. LLC v. Oppidan, Inc.*,
    2014 WL 11510256 (S.D.N.Y. Feb. 4, 2014), *aff'd*, 589 F. App'x 38 (2d Cir. 2015) ............ 5-6

*PrinceRidge Grp. LLC v. Oppidan, Inc.*,
    589 F. App'x 38 (2d Cir. 2015) ............................................................................. 6

*Wilson v. Thorn Energy, LLC*,
    787 F. Supp. 2d 286 (S.D.N.Y. 2011)................................................................. 4,6

**Statutes**

NYRPL § 440 ................................................................................................................. 1

NYRPL § 440-a .............................................................................................................. 5

NYRPL § 442-e .............................................................................................................. 4

**Other Authorities**

1929 Opp. Atty. Gen. 283 .............................................................................................. 8

1934 Opp. Atty. 234 ...................................................................................................... 8

1954 Opp. Atty. Gen. 214 .............................................................................................. 7

*It has been uniformly ruled that persons who engage in the activity of
listing property must be licensed as real estate brokers, even though
they do not participate in the actual negotiations between buyer and seller.*[1]

\*\*\*\*

*[T]he brokerage function is exercised when parties are brought together,
although the details may be worked out later without the broker.*[2]

\*\*\*\*

*Real Estate Galleries which 'list property' and secure a fee for such listing
are brokers in the sense of this section (440 [NY]RPL).*[3]

Plaintiff Parker Madison Partners ("Plaintiff") respectfully submits this memorandum of

law in support of its motion for summary judgment against Defendant Airbnb, Inc. ("Airbnb").

## I.      INTRODUCTION

New York Real Property Law (NYRPL) requires a broker's license for "any person, firm,

limited liability company or corporation, who, for another and for a fee, commission or other

valuable consideration…rents, or offers or attempts to negotiate a…rental of an estate or interest

in real estate, or collects or offers or attempts to collect rent for the use of real estate." *See*

NYRPL § 440(1). Where it is undisputed that an entity is not a licensed real estate broker, and

has recovered fees in connection with the performance of services facilitating a real estate

transaction, summary judgment is appropriate. *See Ling's Properties, LLC v. Bode*, 94 A.D.3d

951, 952 (2d Dep't 2012).

In this case, it is undisputed that Airbnb does is not currently maintain, and has never

had, a license to operate as a real estate broker in the State of New York. Nonetheless, Airbnb

collects significant fees for providing real estate services, including the facilitation of property

---

[1]   *See* 1934 Atty. Opp. 234, 235 (annexed hereto in composite Appendix).
[2]   *People v. Sickinger*, 79 Misc. 2d 572, 360 N.Y.S.2d 796 (Crim. Ct. 1974).
[3]   *People v. Biss*, 81 Misc. 2d 449, 365 N.Y.S.2d 983 (Crim. Ct. 1975)

rentals in the state. Indeed, Airbnb's own documents represent that it: (a) operates a property rental listing service; (b) connects parties for the purpose of consummating rental transactions; (c) collects and distributes rental payments; (d) takes fees proportional to the value of rental transactions; and (e) provides numerous services ancillary to its listing and transactional operations, including rental payment processing, negotiating tools, free photographic services, dispute resolution, and escrow services. It is therefore indisputable that under NYRPL § 440, *et seq.*, Airbnb must have real estate broker's license and that its operation without one is illegal.

Accordingly, Plaintiff, a licensed real estate brokerage entity in New York, seeks an order from this Court, granting summary judgment against Airbnb, and declaring that Airbnb has been operating (and continues to operate) illegally. Plaintiff further seeks an injunction enjoining Airbnb from continuing operations in the State of New York until such time as Airbnb complies in all respects with New York law and licensing requirements.

## II.    FACTUAL BACKGROUND

Airbnb boasts that it has connected more than 60 million people for the purpose of facilitating accommodation rentals in more than 34,000 cities around the world. (SOF ¶13)[4] Airbnb's website, available at www.airbnb.com, and its related mobile application, provide a platform through which third parties can list accommodations for rent ("Hosts") and third parties desiring to book accommodations for rent ("Guests") can locate each other, communicate, and enter into agreements to reserve and consummate property rentals. (SOF ¶¶ 1-5)   Airbnb represents that upwards of 46,000 of these rental listings are located in New York. (SOF ¶ 14)

With the assistance of Airbnb (including free photographic services and pricing tools provided by Airbnb), Hosts create the content contained in each individual rental listing, decide

---

[4]    References to paragraphs in Plaintiff's Rule 56.1 Statement of Undisputed Material Facts In Support of Motion for Summary Judgment are cited herein as "SOF ¶ __."

the rental pricing and terms, and decide when, and to whom, accommodations will be made available. (SOF ¶ 15) Once an agreement to rent is reached between a Host and a Guest, all rental payments (*i.e.,* "Accommodation Fees") must be processed through Airbnb. (SOF ¶¶ 6, 12). Airbnb holds the funds in escrow until the Guest takes possession. (SOF ¶ 16(c)) Before distributing rental proceeds to the Hosts, Airbnb first deducts its "Total Fee" (levied against both Host and Guest) which is calculated respectively as a percentage of the rental transaction. (SOF ¶ 6-11) For Guests, Airbnb discloses that the fee is 6% to 12% of the total rental amount. (SOF ¶ 10) For Hosts, the exact percentage is not disclosed (but reported to be 3%).[5]

In addition, Airbnb provides a number of ancillary services in connection with every listing and rental transaction. (SOF ¶ 16)  For instance, Airbnb makes tools available, such as Guest vetting through reviews and ratings (SOF ¶ 16(a)), free professional photos of the accommodations, which are watermarked on the site as an "Airbnb.com Verified Photo," (SOF ¶ 16(b)), mandatory payment and escrow services (¶¶ 16(c)-(d)), mandatory and exclusive power and discretion to resolve disputes between Hosts and Guests (SOF ¶¶ 16-(f)), and mandatory agent for all communications and transactions between Hosts and Guests (SOF ¶¶ 16(g)). Airbnb also administers its own cancellation policy, including discretion to charge Hosts and Guests a cancellation fee in certain circumstances. (SOF ¶ 16(e))

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

[5]    *See Washington Post article, Thinking of renting out your home on Airbnb? Consider these costs first."*   www.washingtonpost.com/news/get-there/wp/2015/07/24/the-many-unseen-costs-of-renting-out-your-home-through-sites-like-airbnb/?utm_term=.b4bced63d300.

574, 587 (1986) (internal quotation marks omitted). "In this context, a fact is 'material' when it might affect the outcome of the suit under governing law, and an issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Inclan v. N.Y. Hospitality Grp., Inc.*, 2015 WL 1399599, at *2 (S.D.N.Y. Mar. 26, 2015) (citing Fed. R. Civ. P. 26); *see also Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286, 293 (S.D.N.Y. 2011). Once the moving party demonstrates the absence of any material and triable material fact, "the non-moving party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* at *3.

## IV.   ARGUMENT AND AUTHORITIES

### A.  Introduction

In the State of New York, a real estate broker's license is required for anyone facilitating, for a fee, the rental of real property. This is precisely what Airbnb does yet, despite the plain language of NYRPL § 440, *et seq.*, decades of case law precedent, and several New York Attorney General Opinions, Airbnb has failed, and continues to refuse, to procure a real estate broker's license in New York. Accordingly, it is appropriate for the Court to enter an order granting summary judgment in Plaintiff's favor, and against Airbnb, declaring that Airbnb has been operating illegally in New York without a real estate broker's license, and to issue an injunction, enjoining Airbnb's operations in New York until such time as Airbnb complies in all respects with New York law and licensing requirements.

Because Plaintiff is a licensed real estate brokerage company in the State of New York, whose profession is interfered with, threatened, and diminished by Airbnb's unlawful conduct, it is an "aggrieved" party under NYRPL § 442-e(3), entitled to seek relief, including the declaratory and injunctive relief sought herein and a penalty of disgorgement of up to four times

all fees unlawfully taken by Airbnb.[6] *See City Ctr. Real Estate, Inc. v. Berger*, 39 A.D.3d 267 (1st Dep't 2007) (third-party real estate company may bring action under NYRPL § 440 to invalidate brokerage agreement entered into by unlicensed broker as "the intent of the licensing requirement under the Real Property Law, *i.e.*, to protect the public … would be undermined if such [brokerage] agreements were enforceable, even in part").

### B.   The Plain Language of NYRPL § 440, *et seq.* Requires Airbnb to Have a Broker's License

NYRPL § 440-a states that "[n]o person, co-partnership, limited liability company or corporation shall engage in or follow the business or occupation of, or hold himself or itself out or act temporarily or otherwise as a real estate broker or real estate salesman in this state without first procuring a license therefor as provided in this article." NYRPL § 440 defines a "real estate broker" as "any person, firm, limited liability company or corporation, who, for another and for a fee, commission or other valuable consideration, lists for sale, sells, at auction or otherwise, exchanges, buys or rents, or offers or attempts to negotiate a sale, at auction or otherwise, exchange, purchase or rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate…."

Airbnb has no legal right to fees or commissions as New York law precludes any person or entity involved in the process of "buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate," from receiving a fee or commission "unless that person or entity 'alleg[es] and prov[es] that [it] was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.'" *PrinceRidge Grp. LLC v. Oppidan, Inc.*, 2014 WL 11510256, at *5 (S.D.N.Y. Feb. 4, 2014), *aff'd*, 589 F. App'x 38 (2d Cir. 2015) (NYRPL § 442-d "is 'strictly construed,' and 'compliance is mandatory.'"), citing *Am. Prop. Consultants,*

---

[6]   Plaintiff submits that any disgorgement remedy and penalty would inure to the benefit of Hosts and Guests who unwittingly paid the illegal brokerage fees to Airbnb and are entitled to reimbursement.

*Ltd. v. Walden Lisle Assocs.*, 1997 WL 394617, at *7 (S.D.N.Y. July 14, 1997); *Matter of Wertlieb*, 165 A.D.2d 644 (1st Dep't 1991); *Meltzer v. Crescent Leaseholds, Ltd.*, 315 F. Supp. 142, 150 (S.D.N.Y. 1970), *aff'd*, 442 F.2d 293 (2d Cir. 1971)).   It is irrelevant whether a party characterizes a transaction as something other than a real estate transaction, because it "the nature of the underlying transaction, and not the terms used by the parties to describe it" that is determinative. *Id.* ("so long as 'real estate is going to be the principal element involved in the transaction, a broker has to have a license and cannot evade its necessity by referring to the services [by some] other fantastic term").

Although Airbnb refers to itself as nothing more than a "facilitator," its business model falls squarely within the definition of a "real estate broker" under New York law.[7] Airbnb (a corporation): lists and promotes real estate for rent (including tens of thousands of apartments, condos, and homes throughout the City and State of New York); lists apartments on behalf of and for the benefit of third parties (*i.e.*, Hosts and Guests); collects, holds, and distributes rent for said properties; and takes a percentage-based fee from both Hosts and Guests for its role in each rental transaction. Accordingly, as a matter of law, Airbnb meets the definition of a real estate

---

[7]    In a prior court filing in another matter, Airbnb denied that it met the definition of a real estate broker under New York law, citing *Northeast General Corp. v. Wellington Advertising, Inc.*, 82 N.Y.2d 158, 162 (1993), for the proposition that contract terms control the legal capacity of the parties and claimed that it was merely a "facilitator" of real estate transactions and that its "Terms of Service" expressly disavow its role as a "broker." *See* Memorandum of Law submitted on October 1, 2014, in the matter *New Yorkers Making Ends Meet in the Sharing Economy, et al., v. Airbnb, Inc., et al.* Index. No. 158526/2014, p. 6 (annexed in composite Appendix). However, *Northeast General* did not involve the transfer of real property but rather whether a fiduciary relationship arose from a finder-seller agreement for the sale of a business.  There, the court distinguished the roles of finders and brokers and concluded that finders did not have a fiduciary duty. 82 N.Y.2d at 162-163. Subsequently, in *PrinceRidge Grp. LLC v. Oppidan, Inc.*, 589 F. App'x 38 (2d Cir. 2015), the Second Circuit was faced with the exact same argument (*i.e.*, that a real estate finder is not a real estate broker). There, similar to Airbnb, the plaintiff relied on *Northeast General* for the proposition that it was not a real estate broker. The Second Circuit rejected the argument, holding that "New York courts do not distinguish between 'finders' and 'brokers' both are covered by New York Real Property Law § 442-d, so long as the dominant feature of a transaction at issue is the transfer of real property." *Id.* at 40.  Any attempt by Airbnb to raise this same argument again should be similarly rejected.

broker and is mandated to be licensed by the State of New York and to comply with all requirements attendant to said license.

### C.  Bringing Together Hosts and Guests to Facilitate Apartment Rentals Requires Airbnb to Have a Real Estate Broker's License

New York case law also supports the proposition that Airbnb was required to have a broker's license.  In *People v. Biss*, 81 Misc. 2d 339, 365 N.Y.S.2d 983 (Crim. Ct. 1975) two individuals operated a newsletter service, Apartments Available, Inc., and were criminally charged with operating as real estate brokers without a license. *Id.* at 450.  Apartments Available listed vacant apartments in Brooklyn, and specifically disclosed that it was neither the agent of the renter nor the owner of the rental units. *Id.* Apartments Available accepted a $30 fee from the owner of the real estate listed in its newsletter. *Id.* at 451.  In determining that Apartments Available's service required the individuals to have a real estate broker's license, the court noted that "an essential part of the broker's service is the preparation of a 'listing' of available properties and rentals," and under New York precedents, a "broker need not assist in the negotiations. He need only bring the parties together." *Id.* at 452.

Similarly, in *People v. Sickinger,* 79 Misc. 2d 572, 360 N.Y.S.2d 796 (Crim. Ct. 1974), a renter paid a fee to an "apartment referral service," Everything For Living Space, Inc. *Id.* at 572-73. Everything for Living Space provided a listing of vacant apartments, culled from "owners and managers of buildings, tenants, newspaper advertisements of vacant apartments, and street surveys of vacant apartments." *Id.* at 573.  In holding that Everything for Living Space was required to have a real estate broker's license, the court found dispositive that "it is not alleged that [Everything for Living Space] or its agents or employees participate in negotiations between members using its lists, the defendant nevertheless intends to initiate multiple transactions through it service." The court held that "the brokerage function is exercised when parties are

7

brought together, although the details may be worked out later without the broker." *Id.* at 574, *internal citations omitted.*

Airbnb's platform is predicated on its service as a matchmaker, introducing Hosts to Guests, so that apartment rental transactions may be consummated. *Biss* and *Sickinger* make clear that Airbnb's matchmaking function on tens of thousands of rental listings requires it to have a broker's license under NYRPL § 440-a.

### D. Accepting a Fee, Contingent on the Amount of Rent Charged, Requires Airbnb to Have a Broker's License

In 1954, the New York Attorney General was asked to opine upon whether a real estate newsletter that presented classified ads of properties for rent was required to have a broker's license. 1954 Opp. Atty. Gen. 214.[8]   Unlike the flat-fee classified advertisements found in newspapers, the real estate newsletter received a flat fee, plus 1% commission of the advertised sale price upon consummation of a sale. *Id.* The Attorney General wrote:

> what is involved here is something more than traditional advertising and that it tends to encroach upon the regulated field which the Legislature has defined for real estate brokers and salesmen. One whose compensation is contingent upon sale and is a percentage of the sale price, and who agrees to run the ad for a substantial period...takes an interest in the consummated transaction much more direct than the ordinary newspaper publishing an ad.

*Id.* at 214-215.  Accordingly, the Attorney General opined that "a license under Real Property Law §440-a is essential to this activity."

In 1929 Opp. Atty. Gen. 283[9], a real estate advertising agency, known as the Property Placement Syndicate, mailed circulars containing real estate property listings to various purchasers. *Id.*  The contract contained "an agreement on the part of the owner of the property to pay the Syndicate an additional fee 'if the buyer for my property is secured, and the sale

---

[8]   Opinion annexed hereto in composite Appendix.
[9]   Opinion annexed hereto in composite Appendix.

consummated through this service within 90 days after the date of mailing.'" *Id.* at 283-284. The Attorney General determined unequivocally that, "there can be no doubt that this Syndicate is conducting the business of a real estate broker under Section 440…." *Id.* at 283.

The key factor in each of these opinions is that when a fee diverges in any respect from a flat, non-contingent payment (as in a classified listing), it falls within the ambit of NYRPL § 440. Here, there is no dispute that Airbnb is collecting a fee, contingent upon the consummation of a real estate transaction, and calculated as a percentage of the rental price. Accordingly, this presents yet one more reason (among many) that Airbnb is required to be licensed as a real estate broker in the State of New York.

### E.  Airbnb's Performance of Ancillary Services for Hosts and Guests Requires Airbnb to Have a Broker's License

In 1934 Opp. Atty. 234[10], the Attorney General was asked to render an opinion on "Apartment & Home Seekers Sheets," which "solicits the listing and advertising of real property for sale or for rent; and the information so solicited is compiled in a booklet consisting of several sheets on which appear detailed descriptions of properties offered for sale or rent." *Id.*  In addition, the Apartment & Home Seekers Sheets offered other ancillary services upon agreeing to pay a fee, including a sign that read "Apartments for Rent," return postcards, and the opportunity to be connected to a real estate broker. *Id.* at 235.

The owner of the Apartment & Home Seekers Sheet contended that he was merely listing advertisements, and thus did not need to be a registered broker. *Id.* at 235. The Attorney General disagreed, writing that:

> [t]here is unquestionably a distinct difference between advertising real property for sale and listing real property for sale. Listing real property entails very much more than advertising. In the ordinary sense, in advertising, an owner prepares his own material or copy and makes use of a recognized medium which is open to all

---

[10]    Opinion annexed hereto in composite Appendix.

> advertisers. In listing property, however, a specialized medium is employed which offers expert service far beyond that offered by the usual advertising mediums, such as expert advice in setting forth all the pertinent facts about the property offered, and specialized service to bring the listed property to the attention of possible buyers and sellers."

*Id.* The Attorney General went on to note that "[i]t has been uniformly ruled that persons who engage in the activity of listing property must be licensed as real estate brokers, even though they do not participate in the actual negotiations between buyer and seller. *Id.*, *internal citations omitted.*

Airbnb's activities constitute "very much more than advertising," such as the type of vacancy listings that can be found in a newspaper's classified section or on an online marketplace like craigslist.com. Airbnb offers photograph verification of listings, guest vetting, pricing and listing tools, electronic payment and escrow services, exclusive administration of communications and transactions, administration of rent cancellation policies and procedures, exclusive agent and arbiter for dispute resolution, and administrator of security deposit policies and procedures. These ancillary services make it abundantly clear that Airbnb must be licensed as a real estate broker in the State of New York and conform to the requirements attendant thereto.

### F.  Summary Judgment Against Airbnb is Appropriate

The plain language of NYRPL § 440 requires that anyone facilitating, for a fee, the rental of real property in New York, have a real estate broker's license. Airbnb does not currently have, nor has it ever had, a broker's license in the State of New York, yet Airbnb's own statements, materials, practices, and policies remove any triable fact as to whether Airbnb should be so licensed. Accordingly, Plaintiff is entitled to an order from this Court, granting summary judgment against Airbnb, declaring that Airbnb has operated and continues to operate illegally as an unlicensed real estate broker, and an injunction enjoining Airbnb from continuing to operate

in the State of New York until such time as it conforms its practices to the law and licensing requirements of the state.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully seeks an order granting summary judgment in its favor, and for such other and further relief as this Court deems proper under the circumstances.

DATED:   December 7, 2016
                  New York, New York

                                                 Respectfully submitted,

                                                 **NEWMAN FERRARA LLP**

                                    By:_____*s/ Jeffrey M. Norton*_____
                                           Lucas A. Ferrara
                                           Jeffrey M. Norton
                                           1250 Broadway, 27th Fl.
                                           New York, NY 10001
                                           Tel.: (212) 619-5400
                                           Fax: (212) 619-3090
                                           lferrara@nfllp.com
                                           jnorton@nfllp.com

                                           ***Counsel for Plaintiff***
                                           ***and the Proposed Class***

11

**APPENDIX**

I cannot agree with this view. While it is in general true that a statute is not to be construed to have a retrospective operation without express words to that effect, if it is clear that the Legislature intended an act to have a retroactive application the courts must give it such. In this particular instance not only does the history of the legislation afford abundant proof, to those who are familiar with it, that the Legislature meant to abolish all Town Health Districts within the area of County Health Districts, whenever established, but the statute bears upon its face the expressed intention of the Legislature to make it retroactive. It reads: "When the County Board of Health *shall have been* appointed and organized, the local boards of health and health officers of all Towns &ast; &ast; &ast; shall thereupon cease to exist as such." "Shall have been" is a retrospective phrase. (*Matter of Andersen*, 178 N. Y. 416; *Wolfkiel* v. *Mason*, 16 Abb. Pr. 221; *Meyer* v. *Halberstadt*, 44 Misc. 408; *Henney* v. *Trustees, etc.*, 33 Barb. 360, affd., 39 N. Y. 333.)

I conclude that, since September 24, 1928, the Town Board of the Town of Brookhaven, Suffolk County, has had no power to act as a board of health, and that its appointment of a Town health officer is a nullity. Of course there is no question of the Legislature's power to modify, diminish, recall or revoke such authority. (*McAneny* v. *Board of Estimate*, 232 N. Y. 377.)

Dated:  October 17, 1929.

Very truly yours,
HAMILTON WARD,
*Attorney-General.*

To Hon. MATTHIAS NICOLL, JR.,
    *Commissioner of Health.*

---

REAL ESTATE BROKERS—SYNDICATE CIRCULARIZING PURCHASERS FOR A FEE—REAL PROPERTY LAW, ARTICLE 12-A.

    A syndicate which sends circulars, describing real property which is for sale, to prospective purchasers thereof, for a fee, and collects an additional fee if a sale is made through its service, should be licensed as a real estate broker.

The Secretary of State writes, enclosing literature and correspondence relative to the Property Placement Syndicate, and asking whether, in my opinion, the scheme of operations outlined therein is such as to require said Syndicate to be licensed as a real estate broker under the provisions of Article 12-a of the Real Property Law.

The Syndicate's plan appears to be to mail circulars, describing real estate which is for sale, to selected lists of possible purchasers, for which a varying fee is charged. The contract also includes an agreement on the part of the owner of the property to pay to the Syndicate an additional fee "if a buyer for my property is

secured, and the sale consummated through this service within 90 days after date of mailing.''

I think there can be no doubt that this Syndicate is conducting the business of a real estate broker, under Section 440 of the Real Property Law, which defines such a broker as a person, firm or corporation ''who, for another and for a fee, commission or other valuable consideration, lists for sale, sells, * * * or offers or attempts to negotiate a sale * * * of an estate or interest in real estate.'' That the actual sales are turned over to a licensed broker would not suffice, in my opinion, to remove the Syndicate from the operation of the statute, since ''listing for sale'' and ''attempting to negotiate a sale,'' for a fee, constitute the whole course of its business. It follows that the Syndicate should be licensed, pursuant to the statute.

:Dated:  October 25, 1929.

Very truly yours,

HAMILTON WARD,

*Attorney-General.*

To Hon. A. C. MacNulty,
     *Deputy Secretary of State.*

---

PALISADES INTERSTATE PARK—DISPOSITION OF FINES FOR TRAFFIC VIOLA-
TIONS—CONSERVATION LAW, SECTION 748; VEHICLE AND TRAFFIC LAW,
SECTION 73; TOWN LAW, SECTION 171.

    Traffic rules adopted by the Palisades Interstate Park Commission are
not acts of the Legislature, and fines imposed for violations thereof
belong to the local authorities, and the fees of judicial officers in such
cases are a charge upon the local jurisdiction.

The State Comptroller asks as to the disposition of fines collected for violations of rules adopted by the Commissioners of the Palisades Interstate Park for the use and government of such parts of State, County and other public highways as lie along or within the boundaries of such park, and also whether the Comptroller is authorized to pay the fees of judicial officers in cases where arrests for such violations are made by peace officers employed by the State.

The rules referred to are adopted by the Board of Commissioners pursuant to authority now to be found in Section 748 of the Conservation Law, and in my opinion they are not acts of the Legislature within the meaning of the words ''any act in relation to the use of the public highways,'' as employed in Section 73 of the Vehicle and Traffic Law. (*People* v. *Buffalo,* 175 App. Div. 218, affd., 220 N. Y. 715.) Fines for violation thereof belong therefore, in my opinion, to the local jurisdiction in which they are imposed, and the fees of judicial officers in such cases are a charge upon the Town (Town Law, § 171) or other local authority. Since such offenses are not violations of

so indicate.    Under the circumstances you would be properly
advised to decline registration and filing of the petition until the
rights of the parties were determined or the facts ascertained by
you through independent investigation by your own department.

In the Kiamesha Inn case it also would seem to be the fact, if the
affidavit of Herman B. Grossman and the letter from John W.
Lyons are correct, that registration should be denied to the peti-
tioner Patt.  Inquiry into the facts can be made by your depart-
ment and if necessary a hearing had to ascertain wherein the truth
lies.  If the facts be as stated in the protests, you would be
pursuing the proper course to refuse registration.

The requirements are stated in section 209-a as follows:

"Section 209-a.  *(Registration of hotel names.)*   Any person
or corporation now owning or now engaged in and conducting
the business of an hotel in the state of New York may register
the name by which said hotel is known and designated by fil-
ing in the office of the secretary of state a verified petition con-
taining the fac-simile of such name or designation and specifi-
cally describing the location of the hotel to be known by such
name or designation, together with the name and address of
the person or corporation owning or operating the hotel in
addition to such other recitals as the secretary of state may
require.  * * *."

When the facts stated in the petition do not conform to these
requirements, or are shown to be false, you should decline to accept
for registration such petitions.

Dated:  July 12, 1934.

Very truly yours,

JOHN J. BENNETT, JR.,

*Attorney-General.*

DEPARTMENT OF STATE.

---

REAL PROPERTY LAW, ARTICLE 12-A.

The solicitation of advertisements and listings of real property from
the owners thereof, for a fee, the information gained by such solicitation
being compiled in booklets for free distribution, constitutes an activity
which should be licensed under the provisions of Article 12-a, Real Prop-
erty Law.

I have your letters of June 21 and August 6, with which you
forwarded material descriptive of the plan of operation of Apart-
ment & Home Seekers Sheets, a service operated by one Leon
Maguire of Brooklyn.

It appears from the enclosed material that the service solicits
the listing and advertising of real property for sale or for rent;
and the information so solicited is compiled in a booklet consisting
of several sheets on which appear detailed descriptions of prop-

erties offered for sale or for rent.   To so list or advertise his property, the owner pays the Service a fee of $4.00.   This entitles him to thirty days' service and also to a sign, the sample enclosed reading "Apartment For Rent", and referring to Apartment & Home Seekers Sheets, and also to return postcards to be used in publicizing the plan.   The booklet is distributed free of charge, and it is stated that it is sent to all real estate brokers in the vicinity where the scheme is now operating.   Another feature of the plan is the opportunity offered to an owner of property to have his property placed with real estate brokers, through the service, by a notation on his application for service in Apartment & Home Seekers Sheets. You ask to be advised whether a real estate broker's license is required in order to carry on these activities.

The proprietor of the service, in a letter addressed to your department, urges that he is simply selling advertising and, therefore, is not amenable to the provision of section 440 of the Real Property Law, which provides that the term "real estate broker" includes one who, for another and for a fee, lists for sale real property.   There is unquestionably a distinct difference between advertising real property for sale and listing real property for sale. Listing real property entails very much more than advertising. In the ordinary sense, in advertising, an owner prepares his own material or copy and makes use of a recognized medium which is open to all advertisers.   In listing property, however, a specialized medium is employed which offers expert service far beyond that offered by the usual advertising mediums, such as expert advice in setting forth all the pertinent facts about the property offered, and specialized service to bring the listed property to the attention of possible buyers or renters.

It has been uniformly ruled that persons who engage in the activity of listing property must be licensed as real estate brokers, even though they do not participate in the actual negotiations between buyer and seller (See Opinions Attorney-General 1929, p. 283; 1930, p. 270; 1933, p. 298).

It was unquestionably the intent of the Legislature, in enacting article 12-a of the Real Property Law, to provide that all persons, acting for others and for compensation in transactions having to do with real property, should be licensed.   In my opinion the proprietor of Apartment & Home Seekers Sheets should be licensed as a real estate broker, in order to carry on his activities.

Dated: August 9, 1934.

Very truly yours,

JOHN J. BENNETT, JR.,
*Attorney-General.*

DEPARTMENT OF STATE.

corporate purposes are not of a banking nature and, therefore, the corporation may be formed pursuant to Article 2 of the Stock Corporation Law.

October 11, 1954

Department of State

_____

Real Property Law § 440, § 440-a.

> License as real estate broker is required for a "real estate newspaper" which lists and publishes for an indefinite period ads of real property for sale and rent, its compensation a percentage of the price, contingent on a sale or lease being effected.

Your letter of October 11 encloses samples of two publications and asks whether they come within the purview of Real Property Law § 440-a, which requires that real estate brokers and salesmen be licensed.

One of the publications, which will be regarded as representative of both for present purposes, proclaims itself to be a "Real Estate Newspaper — Published Every Other Week." It is published in Westchester County and is sold by subscription and on newsstands. Its format is eight quarto pages composed almost entirely of classified advertising of real property for sale or rent, many of the ads illustrated with small cuts of the houses and business properties being offered. The publication announces that the advertiser of real property for sale will pay $25 when his ad is submitted plus one per cent of the advertised price if and when he "gets results through the ad," which presumably means upon sale. The ad will be run until sold or for a period of 4 to 6 months. The publication also says that all ads are kept on file in its office until the properties are sold, and that "everybody is welcome to come into our office and look through the files" and people are constantly looking through them for things which may not be in the current issue.

The charge for ads of property for rent is likewise contingent on renting, ten per cent of the rental except that rooms for rent are twenty per cent.

Real Property Law § 440 defines a real estate broker as one who, "for another and for a fee, commission or other valuable consideration, lists for sale, sells * * * or offers or attempts to negotiate a sale * * * of an estate or interest in real estate * * *."

It may well be supposed that "lists for sale" means something more than a newspaper's ordinary service in publishing a classified ad for a specific and non-contingent charge. See, for instances of listings which went beyond advertising, 1930 Op. Atty. Gen. 270, 1933 Idem. 298, and 1934 Idem. 234. It is apparent that what is involved here is something more than traditional advertising and that it tends to encroach upon the regulated field which the Legislature has defined for real estate brokers and salesmen. One whose compensation is contingent upon sale and is a percentage of the sale price, and who agrees to run the ad for a substantial period or until a sale is made and keep a file of ads available for searching,

takes an interest in the consummated transaction much more direct than the ordinary newspaper publishing an ad. In my opinion a license under Real Property Law § 440-a is essential to this activity.

October 26, 1954

DEPARTMENT OF STATE

_____

COOPERATIVE CORPORATION LAW, SEC. 12 — AMENDMENT OF CERTIFICATE OF INCORPORATION OF NON-STOCK COOPERATIVE CORPORATION TO AUTHORIZE ISSUANCE OF SHARES OF STOCK.

A certificate of incorporation of a non-stock cooperative corporation may be amended so as to authorize issuance of shares of stock.

This will acknowledge your letter of December 8, 1954, wherein you request my opinion whether the certificate of incorporation of a non-stock cooperative corporation may be amended pursuant to Section 12 of the Cooperative Corporations Law to authorize the issuance of shares of stock by the corporation.

Section 12 provides that a certificate of any cooperative corporation may be amended "provided that the certificate as amended be authorized by the provisions of this chapter applicable to such corporation." Section 11, subdivision 8, thereof authorizes the formation of a cooperative corporation with or without stock. Except for the provision in relation to capital stock, there appears to be no fundamental difference between a stock cooperative corporation and a non-stock cooperative corporation, both classes being clothed with the same general powers (Section 14).

Since the certificate of incorporation of a cooperative corporation may contain a provision authorizing the issuance of shares of stock, I am of the opinion that a certificate of incorporation may be so amended pursuant to Section 12.

December 16, 1954

DEPARTMENT OF STATE

_____

VEHICLE AND TRAFFIC LAW, SECTION 11(1-b).

The Commissioner of Motor Vehicles may not issue certificates of registration in name of Soviet Delegation to the UNO where applicant is not distinct, separate entity but name is merely appropriated by group of individuals.

I have your letter of January 14 wherein you inquire whether the Commissioner of Motor Vehicles may properly issue certificates of registration in the name of "Soviet Delegation to the UNO" and, if so, whether such certificates should be issued without fee. You state that the applications for registration in the aforementioned name are signed by Michael N. Svirin, first secretary, but fail to designate the persons constituting said "delegation."

You inform me that the delegation representing the Soviet Union at the United Nations includes any and all persons attached thereto ranging from the chief official thereof to clerical and similarly

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

NEW YORKERS MAKING ENDS MEET IN THE
SHARING ECONOMY, JOHN DOE Nos. 1-18,
JANE DOE Nos. 1-3,

                    Plaintiffs,

          - against -

AIRBNB, INC.,

              Defendant and
              Interpleading Plaintiff,

          - against -

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL
OF THE STATE OF NEW YORK,

              Interpleaded Defendant.

Index No 158526/2014

Motion Seq. No. 001

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF AIRBNB, INC.'S CROSS-MOTION FOR PARTIAL DISMISSAL

## TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

RELEVANT FACTUAL BACKGROUND ............................................................ 1

I.     THE CLICK CONTRACTS DO NOT
      PREVENT DISCLOSURE PURSUANT TO SUBPOENA ............................................. 3

II.    AIRBNB IS NOT IN A FIDUCIARY RELATIONSHIP WITH ITS USERS ................. 5

III.   THE STORED COMMUNICATIONS ACT DOES NOT APPLY ................................. 7

CONCLUSION ........................................................................................................ 8

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*757 3d Ave. Assocs., LLC* v. *Patel*,
   117 A.D.3d 451 (1st Dep't 2014) ........................................................5

*Airbnb, Inc.* v. *Schneiderman*,
   44 Misc. 3d 351 (Sup. Ct. Albany County 2014) ..........................................2, 3, 5

*Alliance Network, LLC*, v. *Sidley Austin LLP*,
   43 Misc. 3d 848 (Sup. Ct. N.Y. County 2014) ..........................................3

*EBC I, Inc.* v. *Goldman, Sachs & Co.*,
   5 N.Y.3d 11 (2005) ........................................................5

*Gate Techs., LLC* v. *Delphix Capital Mkts.*,
   12 Civ. 7075, 2013 WL 3455484 (S.D.N.Y. July 9, 2013) ........................6

*Hamlet at Willow Creek Dev. Co., LLC* v. *Ne. Land Dev. Corp.*,
   64 A.D.3d 85 (2d Dep't 2009) ........................................................5

*In re Jetblue Airways Corp. Privacy Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) ........................................7

*Learning Annex Holdings, LLC* v. *Whitney Educ. Grp., Inc.*,
   765 F. Supp. 2d 403 (S.D.N.Y. 2011) ........................................6

*Mandelblatt* v. *Devon Stores*,
   132 A.D.2d 162 (1st Dep't 1987) ........................................................5

*In re Michaels Stores Pin Pad Litig.*,
   830 F. Supp. 2d 518 (N.D. Ill. 2011) ........................................7

*N. Shipping Funds I, LLC* v. *Icon Capital Corp.*,
   921 F. Supp. 2d 94 (S.D.N.Y. 2013) ........................................6

*In re Nassau Grand Jury Subpoena*,
   4 N.Y.3d 665 (2005) ........................................................6

*Ne. Gen. Corp.* v. *Wellington Adver., Inc.*,
   82 N.Y.2d 158 (1993) ........................................................5, 6

*Richbell Info. Servs., Inc.* v. *Jupiter Partners, L.P.*,
   309 A.D.2d 288 (1st Dep't 2003) ........................................5

*Ritner* v. *Harris, Upham & Co.*,
   46 Misc. 2d 567 (Sup. Ct. N.Y. County 1965) ................................................ 7

*Rudgayzer* v. *Google, Inc.*,
   986 F. Supp. 2d 151 (E.D.N.Y. 2013) ......................................................... 4

*Sams* v. *Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) ................................................................. 8

*Terra CRG, LLC* v. *Marke*,
   34 Misc. 3d 1243(A), (Sup. Ct. Kings County 2012) ..................................... 6

*Ward* v. *TheLadders.com, Inc.*,
   --- F. Supp. 2d ---, 2014 WL 945011 (S.D.N.Y. 2014) .................................. 4

*Zaltz* v. *JDate*,
   952 F. Supp. 2d 439 (E.D.N.Y. 2013) ......................................................... 4

*STATUTES*

N.Y. Executive Law § 63 ................................................................................ 2

N.Y. C.P.L.R. § 2302 ................................................................................... 2

18 U.S.C. §§ 2701, *et seq.* ...................................................................... 1, 7, 8

## PRELIMINARY STATEMENT

The Motion for a Preliminary Injunction (the "Motion") concedes that Plaintiffs assented to Airbnb's Terms of Service and Privacy Policy.  Users agree in both documents that Airbnb may access, preserve and disclose account information in order to comply with legal process, such as the subpoenas served by the New York Attorney General ("NYAG") here.  The Motion also fails to demonstrate that compliance with that subpoena is barred by federal statute, specifically the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.,* or that Airbnb has a fiduciary relationship with its users.  Indeed, even if Airbnb were a fiduciary, that would not give Airbnb the right to refuse to comply with a valid subpoena.  Accordingly, as set forth below, there is no basis for the Motion and it should be denied.[1]

## RELEVANT FACTUAL BACKGROUND

Airbnb's Terms of Service and Privacy Policy make it clear that Airbnb may access, preserve and disclose user information pursuant to legal process.  In fact, the Motion acknowledges that all users assent to Airbnb's Terms of Service and Privacy Policy before they can list their accommodations on the Airbnb platform.  (Pls. Br. at 3.)  The anonymous affiant supporting the Motion actually confirms this by explaining that he or she had to click an "agreed to box on a Click Contract" in order to become a Host.  (Anonymous Aff. at ¶ 6.)  Airbnb's Terms of Service and the Privacy Policy are the "Click Contracts" that the Motion concedes must be agreed to before using the Airbnb platform.  (*See* Kaplan Aff. Exs. 1 & 2.)  The Privacy Policy expressly provides that users:

> acknowledge, consent and agree that Airbnb may access, preserve and disclose
> [their] account information and Collective Content if required to do so by law or
> in a good faith believe that such access, preservation or disclosure is reasonably

---

[1] Airbnb addresses only those arguments that are directed toward its ability to comply with the NYAG subpoena, and not the alleged constitutional claims which require a governmental actor.  Airbnb filed the interpleader complaint to enable the Court to resolve the issues between the real parties in interest.

1

necessary to . . . comply with legal process (for example, subpoenas and warrants).

(Kaplan Aff. Ex. 2 at 4.) [2]

On October 4, 2013, the NYAG served a *subpoena duces tecum* upon Airbnb pursuant to Executive Law § 63(12) and CPLR § 2302(a) compelling Airbnb to produce various categories of information about its users (the "October Subpoena"). Airbnb contested the October Subpoena, ultimately filing a motion to quash it in Supreme Court, Albany County. On May 13, 2014, Justice Connolly quashed the October Subpoena on the ground that it was overbroad. *See Airbnb, Inc.* v. *Schneiderman*, 44 Misc. 3d 351, 358-59 (Sup. Ct. Albany County 2014). Justice Connolly rejected several other arguments advanced by Airbnb, finding that the October Subpoena had a factual predicate, was not unduly burdensome, was not unconstitutionally vague, and did not improperly seek users' confidential information. *Id.* at 355-61.

On May 14, 2014, the NYAG issued another, more limited, *subpoena duces tecum* to Airbnb. (Bailey Aff. Ex. 8 (the "May Subpoena").) Compliance with the May Subpoena was narrowed as follows: first, Airbnb was initially compelled to make a production of anonymized data with personal information redacted, and second, NYAG could compel Airbnb to provide unredacted identifying information concerning specific users who were the subjects of an investigation or potential enforcement action. (*See* Bailey Aff. Ex. 9.) The document narrowing the scope of compliance with the May Subpoena was publicly announced on May 21, 2014. (*See, e.g.*, http://www.ag.ny.gov/press-release/joint-statement-office-attorney-general-and-airbnb).

---

[2] *See also* Kaplan Aff. Ex. 1 at 11 (providing that Airbnb may disclose user information if it believes that doing so is "reasonably necessary . . . to comply with legal process (for examples, subpoenas or warrants).").

On August 20, 2014, following the initial production of anonymized data, the NYAG compelled Airbnb to produce unredacted, non-anonymized information on approximately 124 users. This August demand by the NYAG was clearly made pursuant to the May Subpoena. (*See* Bailey Aff. Ex. 1 at 2 ("the judge's ruling also made it clear that he would accept a new, narrower subpoena and require Airbnb to turn over personal information about hosts . . . [s]o the very next day, the Attorney General submitted such a narrowed subpoena.").) On August 22, 2014, Airbnb provided notice to account holders whose unredacted data was the subject of the NYAG's demand. (Bailey Aff. Ex. 4.) Plaintiffs filed the instant Motion seeking declaratory judgment and injunctive relief barring Airbnb from complying with the May Subpoena. Airbnb has not produced non-anonymized data relating to the 17 accounts at issue here.

## I.

## THE CLICK CONTRACTS DO NOT
## PREVENT DISCLOSURE PURSUANT TO SUBPOENA

As noted above, Airbnb's Terms of Service and Privacy Policy, to which all Airbnb users must assent, contain agreements that Airbnb can and will produce user data if compelled to do so by legal process, such as a subpoena from the NYAG.[3] Moreover, Justice Connolly reviewed and explicitly relied upon these contractual provisions in finding that the NYAG did not improperly seek confidential information regarding Airbnb users. *See Airbnb*, 44 Misc. 3d at 361 (noting that Airbnb's "privacy policy provides that [Airbnb] will disclose any information in its sole discretion that it believes is necessary to respond to . . . subpoenas"). Thus, the Motion's assertion that there is "no such provision" in the Terms of Service or Privacy

---

[3] When resolving a motion to dismiss, a court "may consider documents referenced in [the] complaint, even if the pleading fails to attach them." *Alliance Network, LLC*, v. *Sidley Austin LLP*, 43 Misc. 3d 848, 873 n.1 (Sup. Ct. N.Y. County 2014). Here, Plaintiffs reference both Airbnb's Terms of Service and its Privacy Policy in the Complaint. (*See, e.g.*, Compl. at ¶¶ 16-19, 46-48, 52, 64; *see also* Pls. Br. at 3-4, 5; Anonymous Aff. at ¶¶ 6-7, 25-26.) Both are publicly available on Airbnb's website.

Policy that would permit Airbnb to comply with the May Subpoena is inaccurate.  (Compl. at ¶ 48.)

While the Motion argues that Airbnb "unilaterally amended" these agreements or that they are somehow unenforceable because plaintiffs were not provided with written copies (Pls. Br. at 3), neither assertion invalidates the consent to the "Click Contracts" which the Motion concedes occurred here.   There is no legal requirement that "Click Contracts" be provided in hard copy.  *See Zaltz* v. *JDate,* 952 F. Supp. 2d 439, 452-54 (E.D.N.Y. 2013).[4] Moreover, Airbnb's Terms of Service and Privacy Policy each provide that Airbnb may modify them at any time, and that by continuing to use the platform, Airbnb users "agree to be bound by the modified Terms [of Service]."  (Kaplan Aff. Ex. 1 at 2.)[5]  The law is clear that when such "Click Contracts" are modified, they remain binding on the parties.  *See, e.g., Ward* v. *TheLadders.com, Inc.,* --- F. Supp. 2d ---, 2014 WL 945011, at *4 (S.D.N.Y. 2014); *Rudgayzer* v. *Google, Inc.,* 986 F. Supp. 2d 151, 154 n.1 (E.D.N.Y. 2013).

The doctrine of equitable estoppel likewise does not support the Motion.   The purpose of equitable estoppel is to prevent one party from injuring another by taking inconsistent positions in litigation.  *See 757 3d Ave. Assocs., LLC* v. *Patel*, 117 A.D.3d 451, 453-54 (1st Dep't 2014).   The doctrine does not require a party to continue taking a position even after it has been rejected by a court.   Here, Justice Connolly rejected the assertion that the information sought by the October Subpoena was confidential.  *Airbnb*, 44 Misc. 3d at 361.

---

[4] California law, which governs and controls the construction and interpretation of the Terms of Service, is in accord with New York Law on these points.  Except where the law is different, for the Court's convenience, Airbnb cites to New York law, and does not intend to, and does not waive any choice of law provision in any of the users' agreements.

[5] *See also* Kaplan Aff. Ex. 2 at 5 ("If you do not wish to agree to the changed Privacy Policy, then we will not be able to continue providing the Platform to you, and your only option will be to stop accessing the Platform and deactivate your Airbnb account").

## II.

## AIRBNB IS NOT IN A FIDUCIARY RELATIONSHIP WITH ITS USERS

"'A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Mandelblatt* v. *Devon Stores*, 132 A.D.2d 162, 168 (1st Dep't 1987) (quoting Restatement (Second) of Torts § 874). Because fiduciary relationships are "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions," where the parties have not contractually agreed to enter into such a relationship, "'courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them.'" *EBC I, Inc.* v. *Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19-20 (2005) (quoting *Ne. Gen. Corp.* v. *Wellington Adver., Inc.*, 82 N.Y.2d 158, 162 (1993)).

There is no support for the assertion that Airbnb and its users are joint venturers. (*See* Pls. Br. at 5-6.) The existence of a joint venture requires "acts manifesting the intent of the parties to be associated as joint venturers, mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge, a measure of joint proprietorship and control over the enterprise, and a provision for the sharing of profits and losses." *Richbell Info. Servs., Inc.* v. *Jupiter Partners, L.P.*, 309 A.D.2d 288, 298 (1st Dep't 2003); *see also Hamlet at Willow Creek Dev. Co., LLC* v. *Ne. Land Dev. Corp.*, 64 A.D.3d 85, 104 (2d Dep't 2009). In fact, because of the "significant duties and obligations" imposed by a joint venture, "the absence of any one of these elements is fatal." *Learning Annex Holdings, LLC* v. *Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403, 412 (S.D.N.Y. 2011).

The Motion does not allege (nor can it) that Plaintiffs exercise "control" over Airbnb or that Airbnb and its users have agreed to share profits or losses. *See N. Shipping Funds*

*I, LLC* v. *Icon Capital Corp.*, 921 F. Supp. 2d 94, 102-03 (S.D.N.Y. 2013). The fact that Airbnb charges its users a fee to use its platform is insufficient. (*See* Compl. at ¶ 60.) Indeed, "[i]t cannot be that the mere payment of monies, as Plaintiffs allege here, can transform an ordinary business relationship into one between fiduciaries." *Gate Techs., LLC* v. *Delphix Capital Mkts.*, 12 Civ. 7075, 2013 WL 3455484, at *7 (S.D.N.Y. July 9, 2013).

The Motion cites no authority, and Airbnb is not aware of any, that holds that merely acting as a "facilitator" is sufficient to create a fiduciary obligation. (*See* Compl. at ¶¶ 58, 62.) And any suggestion that Airbnb acts as a broker is contradicted by the explicit language of Airbnb's Terms of Service. (Kaplan Aff. Ex. 1 at 1 ("AIRBNB IS NOT . . . A REAL ESTATE BROKER" (emphasis in original).) *See also Terra CRG, LLC* v. *Marke*, 34 Misc.3d 1243(A), at *4 (Sup. Ct. Kings County 2012) (no fiduciary duty where contract "expressly state[d] that the parties did not intend to establish a broker-principal relationship."); *Ne. Gen. Corp.* v. *Wellington Adver., Inc.*, 82 N.Y.2d 158 (1993) (looking at contractual terms and distinguishing between finders and brokers).

Even assuming that Airbnb were a fiduciary (which it is not), that relationship still would not justify Airbnb's refusal to comply with the May Subpoena. The existence of a fiduciary relationship does not provide a basis for ignoring valid legal process. In fact, fiduciaries routinely produce information to regulators pursuant to subpoena. *See, e.g.*, *In re Nassau Grand Jury Subpoena*, 4 N.Y.3d 665 (2005) (business partners); *Ritner* v. *Harris, Upham & Co.*, 46 Misc.2d 567 (Sup. Ct. N.Y. County 1965) (stock broker/client).

## III.

## THE STORED COMMUNICATIONS ACT DOES NOT APPLY

The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq.*, does not prohibit disclosing the data demanded by the May Subpoena. The SCA's prohibition on disclosure only applies to subscriber records kept by an electronic communications or a remote computing service. 18 U.S.C. § 2702(a). While Airbnb may provide some electronic communications or remote computing services to users (such as user-to-user messaging), the May Subpoena does not even seek those types of records; it instead seeks Airbnb's transactional records. But the SCA does not apply to Airbnb's transactional records any more than it would apply to a hotel service that takes bookings online. *See, e.g., In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (explaining that JetBlue's maintenance of a website did not convert it into a provider of electronic communication services; rather, JetBlue is a provider of air travel services and a consumer of electronic communication services); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 524 (N.D. Ill. 2011) (transmitting payment data for customers does not make a business an electronic communication service or remote computing service).

Finally, even if the SCA did apply, it would still require Airbnb to disclose basic subscriber records, including subscriber identity information and the means and methods of payment, to a governmental entity in response to a subpoena. *See* 18 U.S.C. § 2703(c)(2)(F). Indeed, the SCA expressly contemplates that such productions will be made pursuant to a subpoena since it gives parties like Airbnb immunity in connection with such a production with respect "to any civil or criminal action brought under [the SCA] or any other

law." 18 U.S.C. § 2707(e); *see also Sams* v. *Yahoo! Inc.*, 713 F.3d 1175, 1182 (9th Cir. 2013) (holding provider entitled to immunity for compliance with a subpoena in good faith).

## CONCLUSION

For the foregoing reasons, the relief sought by Plaintiffs should be denied as to Airbnb and Airbnb should be dismissed from this case.

Dated:  October 1, 2014
        New York, New York

PAUL, WEISS, RIFKIND, WHARTON  & GARRISON LLP

By: _____
        Roberta A. Kaplan

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
(212) 757-3990 (Fax)

*Counsel for Airbnb, Inc.*

8