**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PARKER MADISON PARTNERS,
individually and on behalf of all others similarly
situated,

     Plaintiff,

  -against-

AIRBNB, INC.,

     Defendant.

Index No.: 1:16-cv-08939-VSB

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO AIRBNB, INC.'S MOTION TO DISMISS**

**NEWMAN FERRARA LLP**
Lucas A. Ferrara
Jeffrey M. Norton
1250 Broadway, 27th Fl.
New York, NY 10001
(212) 619-5400

*[ORAL ARGUMENT REQUESTED]*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.      INTRODUCTION ..................................................................................1

II.     STATEMENT OF FACTS ......................................................................4

        A.  Airbnb Provides Real Estate Services in the State of New York ...........................4

        B.  Legal Requirements Exist for Providing Real Estate Services in the
            State of New York ...........................................................................5

III.    ARGUMENT ........................................................................................6

        A.  Plaintiff has Standing Under Article III ...............................................6

            1.  Plaintiff Suffered an Injury in Fact ...........................................7

            2.  Plaintiff's Injury is "Fairly Traceable" to the Conduct of Airbnb
                and will be Redressed With a Favorable Decision ..........................11

        B.  Plaintiff has Standing to Pursue Claims of Unfair Competition and
            Violations of GBL § 349 ...................................................................12

            1.  Plaintiff Alleges a Cognizable Harm Sufficient for Both of its
                Unfair Competition Claims ......................................................13

            2.  Defendant's Misrepresentations and Omissions Threaten the Public
                Interest and the Integrity of the Regulated Real Estate Industry ....................15

        C.  Plaintiff States Claims for Which Relief may be Granted ......................................18

            1.  Plaintiff States a Claim for Unfair Competition Under New York
                Common Law ..........................................................................19

            2.  Plaintiff States a Claim for Violations of GBL § 349 ......................................22

            3.  Plaintiff's Claims Arise From Defendant's Unfair Competition
                Through Misrepresentations to Consumers ......................................................23

IV.     CONCLUSION ..................................................................................24

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*2 Park Ave. Assocs. v. Cross & Brown Co.,*
  36 N.Y.2d 286 (1975) ................................................................................................. 16, 17

*Azby Brokerage, Inc. v. Allstate Ins. Co.,*
  681 F. Supp. 1084 (S.D.N.Y. 1988) ..................................................................................... 12

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................................................. 19

*Bendell v. De Dominicis,*
  251 N.Y. 305 (1929) .............................................................................................................. 18

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.,*
  344 F.3d 211 (2d Cir. 2004), *certified question accepted,* 100 N.Y.2d 636 (2003),
  and *certified question answered sub nom.* 3 N.Y.3d 200 (2004) ......................................... 15, 16

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,*
  786 F.Supp. 182 (E.D.N.Y. 1992), *aff'd in part, vacated in part,*
  973 F.2d 1033 (2d Cir. 1992) ................................................................................................ 12, 16

*Casper Sleep, Inc. v. Mitcham and Matress Nerd LLC,*
  Case No. 16 Civ.. 3224 (JSR), 2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016) ........................ 11

*Conboy v. AT&T Corp.,*
  241 F.3d 242 (2d Cir. 2001) .................................................................................................. 23

*Conboy v. AT&T Corp.,*
  84 Supp. 2d 492 (S.D.N.Y. 2000) ......................................................................................... 23

*Dodge v. Richmond,*
  5 A.D.2d 593 (1st Dep't 1958) .............................................................................................. 16

*Galbreath-Ruffin Corp. v. 40th & 3rd Corp.,*
  19 N.Y.2d 354 (1967) ............................................................................................................. 1

*Goldman v. Belden,*
  754 F.2d 1059 (2d Cir. 1985) ................................................................................................ 19

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.,*
  277 F.Supp.2d 269 (S.D.N.Y. 2003) .......................................................................... 15

*Harper v. N.Y. City Hous. Auth.,*
  673 F.Supp.2d 174 (S.D.N.Y. 2009) .......................................................................... 19

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,*
  58 F.3d 27 (2d Cir. 1995) ................................................................................ 14, 19

*Jinno Int'l Co. v. Premier Fabrics,*
  Case No. 12 CIV. 07820 LGS, 2013 WL 4780049 (S.D.N.Y. May 24, 2013) ................... 14, 15

*Katin v. Nat'l Real Estate Info. Servs.,*
  Case No. CIV. A. 07-10882DPW, 2009 WL 929554 (D. Mass. Mar. 31, 2009) ................... 8, 9

*Kavian v. Vernah Homes Co.,*
  19 A.D.3d 649 (2d Dep't 2005) ............................................................................... 21

*Leider v. Ralfe,*
  387 F.Supp.2d 283 (S.D.N.Y. 2005) ........................................................................ 13

*Ling's Properties, LLC v. Bode,*
  94 A.D.3d 951 (2d Dep't 2012) ............................................................................... 13

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ............................................................................................7

*Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.,*
  199 Misc. 786 (Sup. Ct., N.Y. County 1950) ......................................................... 19, 20

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.,*
  102 A.D.3d 5 (2d Dep't 2012) ................................................................................ 12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
  85 N.Y.2d 20 (1995) ...........................................................................13, 14, 16, 22

*Robainas v. Metro Life Ins. Co.,*
   Case No. 14CV9926 DLC, 2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015), *aff'd sub
   nom. Ross v. AXA Equitable Life Ins. Co.*, No. 15-2665-CV, 2017 WL 730266 (2d
   Cir. Feb. 23, 2017) ........................................................................................................... 10, 11

*Roman v. Lobe,*
   243 N.Y. 51 (1926) ................................................................................................................. 17

*Ross v. AXA Equitable Life Insurance Co.,*
   115 F.Supp.3d 424, 430 (S.D.N.Y. 2015), *aff'd*, No. 15-2665-CV,
   2017 WL 730266 (2d Cir. Feb. 23, 2017) ............................................................................. 10, 11

*Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.,*
   672 F.2d 1095 (2d Cir. 1982) ................................................................................................. 20

*Securitron Magnalock Corp. v. Schnabolk,*
   65 F.3d 256 (2d Cir. 1995) ..................................................................................................... 16

*Serrano v. Cablevision Sys. Corp.,*
   863 F.Supp.2d 157 (E.D.N.Y. 2012) ...................................................................................... 22

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) .......................................................................................................... 7, 11

*Stutman v. Chemical Bank,*
   95 N.Y.2d 24 (2000) .............................................................................................................. 14

*Trieber v. Aspen Dental Mgmt., Inc.,*
   94 F.Supp.3d 352 (N.D.N.Y. 2015) ...................................................................................... 9, 10

*Triber v. Aspen Dental Mgmt., Inc.,*
   635 F.App'x 1 (2d Cir. 2016) ............................................................................................. 9, 10, 24

*Vedder Software Grp. Ltd. v. Ins. Sers. Offices, Inc.,*
   Case No. 111CV00369GTSCFH, 2013 WL 12121098 (N.D.N.Y. Mar. 22, 2013),
   *aff'd sub nom. Vedder Software Grp. Ltd. v. Ins. Servs. Office, Inc.*, 545 F. App'x
   30 (2d Cir. 2013) .................................................................................................................... 14

*Vitabiotics Ltd. v. Krupka,*
   606 F.Supp. 779 (E.D.N.Y. 1984) ......................................................................................... 15, 16

*Yantha v. Omni Childhood Ctr., Inc.,*
   Case No. 13 Civ. 1948, 2013 WL 5327516 (E.D.N.Y. Sept. 20, 2013) ............................. 12, 13

*Yarbough v. AXA Equitable Life Ins. Co.,*
   Case No. 15-CV-2585 RJS, 2015 WL 6792225 (S.D.N.Y. Oct. 22, 2015), *aff'd sub
   nom. Ross v. AXA Equitable Life Ins. Co.*, No. 15-2665-CV, 2017 WL 730266 (2d
   Cir. Feb. 23, 2017) ........................................................................................................ 10, 11

*Yellow Book Sales & Distribution Co. v. Hillside Van Lines, Inc.,*
   98 A.D.3d 663 (2d Dep't 2012) ............................................................................................ 22

### Statutes

Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 3, 8, 18, 24

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 3, 4, 8, 18, 19, 24

GBL § 349 ................................................................................................................ *passim*

NYRPL § 440-a .......................................................................................................... *passim*

NYRPL § 440(1) ......................................................................................................... *passim*

NYRPL § 441-b ............................................................................................................. 5, 6

NYRPL § 442 ................................................................................................................... 17

NYRPL § 442-d ................................................................................................ 1, 13, 20, 21

NYRPL § 442-e ................................................................................................................. 10

### Other Authority

Code of Ethics and Standards of Practice, National Association of Realtors,
   https://www.nar.realtor/sites/default/files/policies/2017/2017-Code-of-Ethics.pdf
   (last visited Mar. 3, 2017) ...................................................................................................6

Code of Ethics, Real Estate Board of New York,
   https://www.rebny.com/content/rebny/en/about/code-of-ethics.html
   (last visited Mar. 3, 2017) ...................................................................................................6

FAQ - Real Estate Salesperson and Broker, Div. of Licensing Services, Dep't of State,
https://www.dos.ny.gov/licensing/re_salesperson/re_sales_broker_faq.html#3
(last visited Mar. 3, 2017 .................................................................................................6

Professional Standards, New York State Association of REALTORS,
http://www.nysar.com/top-navigation/professional-standards
(last visited Mar. 3, 2017) ............................................................................................ 18

Plaintiff Parker Madison Partners ("Parker Madison" or "Plaintiff") respectfully submits this Memorandum of Law in Opposition to Airbnb, Inc.'s ("Airbnb" or "Defendant") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons argued herein, Plaintiff respectfully submits that Defendant's motion should be denied in its entirety.

## I.   <u>INTRODUCTION</u>

The central question in this case is whether Airbnb uses deception in order to exploit and unfairly compete for business in a regulated marketplace reserved exclusively for licensed real estate professionals.  Parker Madison, like all members of the class, is a licensed real estate broker. Airbnb is not.

New York Real Property Law ("RPL") § 440(1), unambiguously provides that a "real estate broker" is any person or firm that, *inter alia*, lists for sale, exchanges, buys or rents, or attempts to negotiate a rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate.  *Any* individual or business that falls within the definition of a real estate broker must procure a license from the State of New York pursuant to RPL § 440-a. And, *any* individual or business that conducts business as a real estate broker without a license is prohibited from earning fees and commissions. *See* RPL § 442-d; *Galbreath-Ruffin Corp. v. 40th & 3rd Corp.*, 19 N.Y.2d 354, 362 (1967). New York's licensing requirements exist to protect consumers from deceptive and unethical conduct, maintain professional standards, and ensure that only licensed brokers (who follow the rules and abide by the law) maintain entitlement to commissions.

As alleged in Plaintiff's Amended Complaint (the "Amended Complaint"), Airbnb's services, operations, and practices fit squarely within the clear-cut legal definition of a "real estate broker" under New York law. Indeed, in addition to its open and obvious real estate practices, Airbnb's own documents represent that it: (a) operates a property rental listing service;

(b) connects parties for the purpose of consummating rental transactions; (c) collects and distributes rental payments; (d) takes fees proportional to the value of rental transactions; and (e) provides numerous services ancillary to its listing and transactional operations, including rental payment processing, negotiating tools, free photographic services, dispute resolution, and escrow services. Airbnb also engages in various activities that licensed brokers are either prohibited from engaging in or which require specific disclosure to and written waivers from consumers. These include self-interested transactions, conflicts of interest, and limitations on liability. Yet, unconstrained by licensing requirements, regulatory oversight, and professional standards, Airbnb remains free to gain an unfair competitive advantage over licensed real estate brokers who are obligated to operate within the bounds of the law.

Since it began listing and brokering apartment rentals in New York and elsewhere, Airbnb has drawn hundreds of thousands of consumers, facilitated millions of rental transactions, and collected billions of dollars in fees and commissions for services requiring licensure and oversight.  Airbnb deceives consumers (and diverts business from licensed real estate brokers) not only by way of material omissions (*i.e.,* failing to disclose that its services, fees, and commissions are unlicensed, unregulated, and illegal) but through express misrepresentations. While Defendant argues that Airbnb's Terms of Service effectively disclaim its role as a broker vis-à-vis consumers, this fact actually compounds the deception. Indeed, expressly disclaiming the application of law is an acknowledgement that the law was read and understood in the first instance. To that end, Airbnb has not (and cannot) explain how its services fall outside the scope of RPL § 440, *et seq.*

Airbnb undoubtedly recognizes that its actions are prohibited under New York law, but, for obvious reasons (indeed, *billions* of reasons), it actively maintains the pretext of legality. By

this action, Plaintiff seeks to enjoin Airbnb from continuing to provide real estate brokerage services that it is unlicensed to provide. Such relief will prevent Airbnb from further taking unfair advantage of a marketplace through deceptive conduct and prevent Airbnb from diverting consumers and revenue away from licensed real estate brokers.

Defendant moves to dismiss under Fed. R. Civ. P 12(b)(1) asserting that licensed real estate brokers such as Plaintiff lack Article III and statutory standing to enjoin an unlicensed real estate broker from engaging in unfair competition. Defendant argues, erroneously, that Plaintiff lacks standing because it has no cognizable injury and is attempting to use General Business Law ("GBL") § 349 and the New York common law claim of unfair competition to create a private right of action where none exists. Airbnb is wrong.

Because Airbnb is deceiving real estate consumers for the purpose of diverting business and commissions away from licensed brokers – and thereby gaining an unfair competitive advantage in a commercial space reserved for licensed brokers – Plaintiff establishes a readily-ascertainable and cognizable harm to itself and others. Conversely, the cases relied on by Airbnb involve instances where there was no ascertainable harm or consumer-related conduct traceable to a statutory violation. This is a critical distinction that Airbnb attempts to obscure.  It is not the violation of RPL § 440 that forms the basis of Plaintiff's claims but rather the deception of Airbnb's illegal conduct that facilitates unfair competition to the detriment of licensed brokers. This is more than a sufficient basis for Article III and statutory standing under GBL § 349.

Finally, despite its initial insistence that Plaintiff's motion for summary judgment was premature and persuading the Court to stay all matters (including discovery) pending a determination of the Court's subject matter jurisdiction, Defendant also moves for dismissal under Rule 12(b)(6) for failure to state a claim. This is contrary to the Court's instruction at the

December 20, 2016 pre-motion hearing whereat the Court opted to hold in abeyance Plaintiff's motion summary judgment (Dkt. No. 4), and deny Plaintiff's request to serve a Request for Admission, so that the threshold issue of subject matter jurisdiction could be resolved. Accordingly, if the Court elects to further consider Defendant's Rule 12(b)(6) motion, Plaintiff respectfully submits that its motion for summary judgment be considered and/or that it be permitted to proceed immediately with the requested discovery.

## II.    STATEMENT OF FACTS

### A.  Airbnb Provides Real Estate Services in the State of New York

Since 2008, Airbnb has operated as a "marketplace for people to list, discover, and book unique accommodations around the world — online or from a mobile phone or tablet." AC ¶ 32.[1] According to Airbnb, it has facilitated accommodations for more than "60,000,000" Guests, in more than "34,000" cities, in more than "190" countries. *Id.* A significant portion of Airbnb's business and revenue comes from the services it provides within the State and City of New York. *Id.* at 17. In fact, in New York City, alone, Airbnb reportedly brokers an average of 25,000 rental transactions per day (earning hundreds of millions of dollars in commissions annually), making it Airbnb's largest real estate rental market in the entire United States. AC ¶¶ 17, 33.

Airbnb's website, available at www.airbnb.com, and its related mobile application, provide a platform through which third parties can list accommodations for rent ("Hosts") and third parties desiring to book accommodations for rent ("Guests") can locate each other, communicate, and enter into agreements to reserve and consummate property rentals through Airbnb. AC ¶¶ 32, 34, 39.  Airbnb services include listing and advertising properties available for rent, regulating and controlling the online forum through which all Hosts and Guests must

---

[1]    References to Plaintiff's Amended Complaint are cited as "AC ¶___."

conduct their communications and negotiations, and providing the exclusive mechanism to process payments for consummating rental agreements. AC ¶ 39. Airbnb also aids Hosts in setting rental prices for their units using Airbnb's proprietary software and business data of all Airbnb rentals in the particular location. AC ¶ 39 Airbnb also provides free-of-charge a professional photographer to take pictures of Host properties to be published on its website and outside advertising to increase traffic to its listings. AC ¶ 39

Upon consummation of a rental agreement, Airbnb requires that Guests pay all of the rent and commission owed in each transaction directly to Airbnb. AC ¶ 39. Airbnb then acts as the escrow agent and determines when and how much of the rental money is distributed to the Hosts. *Id.* Airbnb charges Hosts a 3% commission on the revenue generated from rentals completed through its website and also charges its Guests a commission. *Id.* at ¶¶ 35-37. Airbnb does not disclose the percentage or amount of these Guest commissions to the Hosts or anyone other than the Guests. *Id.* at ¶ 38. However, Airbnb's website claims the Guests' commissions vary with each transaction and fall somewhere within a range of 6% to 12% of the rental contract. AC ¶ 38.

## B. Legal Requirements Exist for Providing Real Estate Services in the State of New York

New York law mandates that "[n]o person, co-partnership, limited liability company or corporation shall engage in or follow the business or occupation of, or hold himself or itself out or act temporarily or otherwise as a real estate broker … in this state without first procuring a license therefor." RPL § 440-a. A "real estate broker" is defined as "any person, firm, limited liability company or corporation, who, for another and for a fee, commission or other valuable consideration … rents, or offers or attempts to negotiate a … rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate." RPL § 440(1).

All real estate brokers operating within the State of New York must obtain a license. RPL § 440-a. Brokers applying for a license must adhere to the stringent requirements of RPL § 441. Furthermore, real estate brokers must pay license fees pursuant to RPL § 441-b.

> The process for being approved as a licensed real estate broker is extensive.
>
> In order to qualify for licensure as a real estate broker, an applicant must have at least two years of experience as a licensed real estate salesperson or at least three years of experience in the general real estate field (*e.g.,* buying and selling your own property, managing property owned by your employer), have satisfactorily completed both the qualifying salesperson course of 75 hours and an additional 45-hour real estate broker course as approved by the Secretary of State, and have passed a qualifying examination administered by the Department of State.

FAQ – Real Estate Salesperson and Broker, Division of Licensing Services, Department of State https://www.dos.ny.gov/licensing/re_salesperson/re_sales_broker_faq.html#3 (last visited Mar. 3, 2017).

Once licensed, real estate brokers have continuing obligations, including a requirement of completing 22.5 hours of approved continuing education within their license period in order to renew their licenses. *Id.* Real estate continuing education credit is granted for programs approved by the Department of State ("DOS") only and offered only by DOS-approved providers. *See* http://www.nysar.com/education/requirements-for-nys-realtors. Licensed real estate brokers also adhere to a number of codes of ethics. *See* Code of Ethics, Real Estate Board of New York, https://www.rebny.com/content/rebny/en/about/code-of-ethics.html (last visited Mar. 3, 2017); Code of Ethics and Standards of Practice, National Association of Realtors, https://www.nar.realtor/sites/default/files/policies/2017/2017-Code-of-Ethics.pdf (last visited Mar. 3, 2017).

There is no plausible argument as to whether the services Airbnb provides and commissions it takes on every rental transaction require a license. Yet, for obvious reasons,

Airbnb maintains that it is not a real-estate broker (Def. Mem. at 3) and uses this deception to exploit a marketplace and its lawful participants.

## III.   ARGUMENT

### A.  Plaintiff has Standing Under Article III

Article III standing requires allegations that a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). As alleged in the Amended Complaint and argued herein, Airbnb's deceptive conduct causes injury by allowing it to illegally exploit a marketplace and compete for and divert customers and revenue away from licensed real-estate brokers in New York, including the Plaintiff.  The harm befalling Plaintiff and others results directly from Airbnb flourishing operations (which deceive consumers and allow it to gain an unfair competitive advantage) in a commercial space reserved solely for licensed real-estate brokers. Finally, the harm will be redressed with appropriate injunctive and declaratory relief preventing Airbnb from engaging in such conduct.

#### 1.  Plaintiff Suffered an Injury in Fact

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). By offering services to real estate consumers that only licensed brokers can offer and taking commissions on rental transactions that only licensed brokers can earn, Airbnb's conduct causes an injury in fact (financial, reputational, and professional) to licensed brokers, like the Plaintiff.

The burden on Plaintiff to plead an injury in fact on a motion to dismiss is low. *See Katin v. Nat'l Real Estate Info. Servs., Inc.*, No. CIV. A. 07-10882DPW, 2009 WL 929554, at *1 (D. Mass. Mar. 31, 2009). In *Katin*, the plaintiffs, licensed attorneys who had undertaken conveyancing for real estate transactions, alleged that the defendants had engaged in the unauthorized practice of law and unfair competition by engaging in conveyancing for banks and mortgage lenders without a license to practice law. *Id.*  As in this case, defendants moved to dismiss alleging that plaintiffs lacked Article III standing and failed to state a claim for which relief could be granted. *Id.* at *2. With regard to Article III standing, defendants argued that there was no injury alleged or "that [plaintiffs] in particular lost a single client or opportunity." *Id.* at *6.  Although the court made clear that "it would be insufficient for a plaintiff seeking damages merely to allege the *presence* of illegal competition in the same industry," it denied the motion to dismiss finding that "where—as in this case—a plaintiff alleges *actual* economic injury but does not offer specific examples, [. . .] plaintiff's allegations establish a "plausible entitlement to relief" under the *Twombly* pleading standard." *Id.* This was so even where the complaint neither identified "any particular clients who stopped using plaintiffs for conveyancing services in favor of the defendants" nor "that any particular prospective client transactions were adversely affected by the defendants' allegedly unlawful activity." *Id.* at *4. The court found that "plaintiffs' general allegations of economic harm" were sufficient to survive a motion to dismiss. *Id.* at *7.[2]

---

[2]   The court also denied defendants 12(b)(6) motion in regards to the unfair competition claim pursuant to Massachusetts deceptive and unfair practices law. Mass. Gen. Laws ch. 93A §§ 2, 11. The court held that "plaintiffs' allegations that defendants adversely affected their competitive position in the market for conveyancing services by engaging in the unauthorized practice of law may constitute an 'unfair method of competition' within the meaning of Chapter 93A." Defendants argued that even if deception occurred, the plaintiffs suffered no injury. The court reiterated its analysis under 12(b)(1), holding "that plaintiffs have pled sufficient facts to allege that they are subject to ongoing economic harm of a potentially

Similar to defendants in *Katin*, here, Airbnb is acting as a real estate broker without a license and alleged to be unfairly competing with licensed brokers, such as Plaintiff, by exploiting a commercial space reserved for licensed and regulated brokers (while insulating itself from regulation and oversight). AC ¶ 45.  For these reasons, Airbnb has misappropriated, and continues to misappropriate, customers, fees and commissions that only licensed real estate brokers are entitled to. AC ¶ 52. Therefore, Plaintiff's alleged injuries are plead with sufficient particularity for Article III purposes.

Defendant asserts incorrectly that *Trieber v. Aspen Dental Management, Inc.*, 94 F. Supp. 3d 352, 363 (N.D.N.Y. 2015), *aff'd*, 635 F. App'x 1 (2d Cir. 2016), is dispositive. Unlike in the present case where the Plaintiff and the class are in competition with an unlicensed broker (*i.e.*, Airbnb), in *Trieber* the plaintiffs were consumers who alleged they were injured when they were deceived into paying for services provided by a dental services provider engaging in the unauthorized corporate practice of medicine. *Id.*  In its motion to dismiss, defendants argued that the plaintiffs had "not alleged they were harmed by defendants in any medical or financial sense, and [that] the unlicensed practice of medicine, standing alone, is not a legally cognizable harm under New York law." *Id.* The court dismissed the complaint because it found that consumers treated by the defendant did not allege a sufficient injury. *Id.* at *3. Specifically, the plaintiffs did "not allege that they were treated by any unlicensed dentists, that any doctor committed malpractice, that they were ever billed for services that they did not need or receive, or that they suffered injury from any other conduct that, in itself, might 'tend[ ] to deceive consumers.'" *Id.*

---

indefinite nature from the adverse effect of defendants' presence in the market for conveyancing services." *Id.*

Unlike in *Trieber*, the Plaintiff here is not a consumer, but a corporate competitor alleging that Defendant has and continues to unfairly compete in a commercial space reserved for licensed real estate brokers.[3] Moreover, Plaintiff here alleges a concrete and specific injury in that it suffered harm due to Airbnb conducting business in a marketplace reserved exclusively for licensed brokers such as the Plaintiff and the purported class. AC ¶ 47. Thus, unlike *Trieber*, Plaintiff here has alleged a specific harm as a result of Airbnb's unfair competition and collection of commissions and fees to which only Plaintiff and the members of the class are entitled to. AC ¶ 57.

Defendant's reliance on cases such as *Yarbough v. AXA Equitable Life Ins. Co.*, *Ross* v. *AXA Equitable Life Insurance Co.*, and *Robainas v. Metro. Life Ins. Co.* is also misplaced. Each of these three cases focused on insurance companies' use of reinsurance and "shadow insurance" transactions. The plaintiffs in these actions alleged that the defendant insurance companies were misrepresenting their financial health by not disclosing these shadow insurance transactions, and as a result plaintiffs "paid premiums for life insurance policies that are less financially secure than AXA represented them to be." *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 431 (S.D.N.Y. 2015); *see Robainas v. Metro. Life Ins. Co.*, No. 14CV9926 DLC, 2015 WL 5918200, at *4 (S.D.N.Y. Oct. 9, 2015) (Plaintiffs alleged that they "paid premiums for life insurance policies that are less financially secure than MLIC represented them to be."); *see Yarbough v. AXA Equitable Life Ins. Co.*, No. 15-CV-2585 RJS, 2015 WL 6792225, at *1 (S.D.N.Y. Oct. 22, 2015) (Plaintiffs alleged "a "theory of injury" that is identical to that

---

[3]   As discussed, *infra* (Sec. III(C)(3)), the issue in *Trieber* was also that there was no statutory private right of action for a violation of New York's prohibition on the corporate practice of medicine. *See* 94 F.Supp. at 363.  Thus¸ *Trieber* would only be analogous if the Plaintiff here was a real estate consumer (not a competitor) *and* if RPL § 440 lacked a private right of action for disgorgement of illegal commissions (which it, *in fact*, provides for). *See* RPL § 442-e(3).

advanced by the plaintiffs in *Robainas* and *Ross*."). In *Ross*, the plaintiffs did not allege that "they would not have purchased policies from AXA but for its nondisclosures, or that they suffer any past or current financial harm by virtue of its misrepresentations, any risk of harm that they face is a risk of harm in the *future*." *Ross*, 115 F. Supp. at 437. Without those allegations, the court found the claims in all of these cases were "'far too hypothetical, speculative, and uncertain.'" *Yarbough*, 2015 WL 6792225 at *1 *citing Ross,* 115 F. Supp. at 437; *see also Robainas*, 2015 WL 5918200 at *7.

Here, in contrast, Plaintiff asserts concrete claims. Specifically, were it not for Defendant's deception in the real estate marketplace, Defendant would not have been able to provide services, collect commissions, and divert business away from licensed real estate brokers, like the Plaintiff and other members of the class. AC ¶¶ 47, 52.

### 2.  Plaintiff's Injury is "Fairly Traceable" to the Conduct of Airbnb and will be Redressed With a Favorable Decision

Plaintiff suffered an injury that is direct and "fairly traceable to the challenged conduct of the defendant." *Spokeo,* 136 S. Ct. at 1547. Due to Airbnb's conduct, thousands of consumers were made to believe, falsely, that Airbnb was conducting business legally in a commercial space reserved for licensed real-estate brokers. Because of this deception, Airbnb exploited the market, competed for customers, and diverted away significant revenue from Plaintiff and the class of licensed brokers.

The diversion of consumers and revenue is sufficiently direct and traceable to the conduct of Airbnb. *See Casper Sleep, Inc. v. Mitcham and Mattress Nerd LLC,* No. 16 CIV. 3224 (JSR), 2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016). *Casper* is directly on point. In that action, the plaintiff alleged that a mattress reviewer violated GBL § 349 when it implied its reviews were unbiased when in reality it was receiving sales commissions through affiliate marketing

relationships with many of plaintiff's competitors. The defendants asserted that plaintiff's claim for injury was not direct, but derivative because it was "based wholly on the injury suffered by consumers in purchasing 'inferior' products." *Id.* at *2 (internal quotations omitted). In denying a motion to dismiss, this court stated that "[i]t is the withholding of trade, rather than any consumer's subsequent purchase of a competitor's product, that produces plaintiff's injury, and thus that injury is direct, rather than derivative of an injury to consumers." *Id.*; *see also N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 17 (2d Dep't 2012) (holding that "direct business loss of customers" due to "an effort to wrest away customers through false and misleading statements" was a sufficient injury for standing pursuant to GBL § 349). Here, Airbnb exploits a market by deceiving consumers as to the legality of its services and commissions which necessarily diverts business and revenue away from licensed real-estate brokers.

To redress its injury, Plaintiff and members of the class seek injunctive and declaratory relief to prevent Airbnb from engaging in unfair competition and conduct that violates GBL § 349. This can be accomplished by enjoining Airbnb from engaging in unlicensed real estate practices and collecting fees and commissions that it is not lawfully entitled to.

**B.  Plaintiff has Standing to Pursue Claims of Unfair Competition and Violations of GBL § 349**

A corporate competitor has standing under GBL § 349 if (1) "the act or practice was misleading in a material way," *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F. Supp. 182, 215 (E.D.N.Y.), *aff'd in part, vacated in part,* 973 F.2d 1033 (2d Cir. 1992); (2) "the plaintiff was injured," *Id.*; and, (3) "the gravamen of the complaint must be consumer injury or harm to the public interest,*" Azby Brokerage, Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084, 1089 n.

6 (S.D.N.Y.1988). Airbnb's representations regarding the legality of its conduct materially mislead consumers, creates an injury to the Plaintiff, and presents harm to the public interest.

Plaintiff also has standing for claims of unfair competition. "[A] plaintiff must allege either a direct financial loss, lost dealings, or lost profits resulting from the anticompetitive acts at issue, or, at the very least, that defendant diverted plaintiff's customers and business to defendant." *Yantha* v. *Omni Childhood Ctr., Inc.*, No. 13 Civ. 1948, 2013 WL 5327516, at *7 (E.D.N.Y. Sept. 20, 2013) (quotations and alterations omitted). Plaintiff has explicitly asserted that "[f]or its own commercial advantage, Airbnb has misappropriated, and continues to misappropriate, customers, fees, and commissions that only licensed real estate brokers are entitled to." AC ¶ 52.

### 1. Plaintiff Alleges a Cognizable Harm Sufficient for Both of its Unfair Competition Claims

If an entity engages in the activity outlined by RPL § 440(1), without a license, it is not entitled to receive commissions. *See Ling's Properties, LLC v. Bode*, 94 A.D.3d 951, 952 (2d Dep't 2012) ("Real Property Law § 442–d bars unlicensed persons and corporate entities from recovering fees or commissions for the performance of services facilitating, *inter alia*, the sale of real property."). Airbnb misrepresents its conduct as lawful and outside the purview of New York's licensing requirements. This conduct not only deceives consumers into doing business with Airbnb instead of licensed brokers, but facilitates unfair competition with licensed real-estate brokers in a regulated marketplace. This gives Airbnb an unfair competitive advantage (being not bound by strict ethical, licensing, and regulatory requirements) on has resulted in Airbnb making substantial revenues to which only licensed real-estate brokers, such as Plaintiff, are entitled.

Airbnb's unfair competition and violations of GBL § 349 arise from its active deception –
in the absence of which it would be required to compete on equal footing with licensed real-
estate brokers.  A deceptive act is one that would "deceive a reasonable consumer in a material
respect." *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005); *see Oswego Laborers'
Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (1995). Airbnb's
conduct of listing rentals, facilitating and controlling rental transactions, and collecting
commissions (while failing to disclose that it is unlicensed to perform these functions and falsely
representing that it is not a real-estate broker), would deceive a reasonable consumer into
believing that Airbnb's practices are lawful, that Airbnb can legally collect commissions on the
rental of real estate, and that they need not seek out (and are not entitled to) the services of
licensed real estate brokers.

Even assuming, *arguendo*, that Plaintiff failed to point to specific pecuniary harm, unfair
competition claims can also be used to remedy non-pecuniary injuries. *See Oswego Laborers'* 85
N.Y.2d at 25 (a plaintiff need not have suffered pecuniary harm to recover under GBL § 349);
*Stutman v. Chemical Bank*, 95 N.Y.2d at 29 (same). This is especially so where, as here, Plaintiff
seeks only declaratory and injunctive relief (as opposed to monetary).  *See Jeffrey Milstein, Inc.
v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995). Here, Airbnb is threatening the
very industry which it exploits, diminishing the integrity and quality of Plaintiff's profession,
and undercutting the purpose of legal requirements and professional standards that all licensed
brokers must maintain. This harm, standing alone, is sufficient for standing under GBL § 349.

Defendant's citations to *Vedder Software Grp. Ltd. v. Ins. Servs. Offices, Inc.* and *Jinno
Int'l Co. v. Premier Fabrics, Inc.* are erroneous. In *Vedder Software*, the alleged injury was
solely that the "consuming public has been confused or deceived." No. 111CV00369GTSCFH,

2013 WL 12121098, at *8 (N.D.N.Y. Mar. 22, 2013). Here, Plaintiff's assertion is more than the mere occurrence of misrepresentations to the public, but the fact that the deception resulted in financial harm, specifically the redirection of hundreds of millions of dollars in business that only licensed real-estate brokers may earn.

In *Jinno*, the defendant alleged a counter-claim for unfair competition because the plaintiff "persuaded Premier's customers not to buy from Premier, and instead to buy directly from Jinno." No. 12 CIV. 07820 LGS, 2013 WL 4780049, at *1 (S.D.N.Y. May 24, 2013). The court dismissed this claim because there were "no facts alleged concerning the clients, contact that Premier supposedly made with the clients, or orders that Jinno purportedly refused to place for Premier." *Id.* at *6. Here, Plaintiff alleges, as Airbnb's own documents represent, that Defendant is performing clearly-defined real estate services that require licensure: *i.e.*, listing and promoting real estate for rent (including tens of thousands of apartments, condos, and homes throughout the City and State of New York); listing apartments on behalf of and for the benefit of third parties (*i.e.*, Hosts and Guests); collecting,  holding, and distributing rent for said properties; and taking percentage-based fees from both Hosts and Guests for its role in each rental transaction. AC ¶ 39. Moreover, Plaintiff alleges that "Airbnb has misappropriated, and continues to misappropriate, customers, fees and commissions that only licensed real estate brokers are entitled to." AC ¶ 52. This is sufficient to establish harm for the purposes of GBL § 349 and a common law claim for unfair competition.

> **2. Defendant's Misrepresentations and Omissions Threaten the Public Interest and the Integrity of the Regulated Real Estate Industry**

Courts repeatedly and uniformly hold that a "potential danger to the public health or safety" and "conduct that has 'significant ramifications for the public at large'" is sufficient for a

corporate competitor to have standing under GBL § 349. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003); *see also Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F. Supp. 182, 216 (E.D.N.Y.), *aff'd in part, vacated in part*, 973 F.2d 1033 (2d Cir. 1992) (discussing *Vitabiotics Ltd. v. Krupka,* 606 F.Supp. 779 (E.D.N.Y.1984) and granting preliminary injunction against a defendant who adopted vitamin manufacturer's mark and trade dress and whose vitamins allegedly contained unlawful substances); *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (lock manufacturer and installer gave false information about competitor's lock to regulatory agency primarily concerned with public safety); *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir.), *certified question accepted,* 100 N.Y.2d 636 (2003), and *certified question answered sub nom. Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200 (2004) (health insurer had standing to sue tobacco companies under New York consumer protection statute for increased costs of care of insured smokers resulting from companies' schemes to distort body of public knowledge concerning risks of smoking, finding that tobacco companies' deceptive practices involved serious harm to public).

Airbnb's deception about the legality of its conduct presents an actual danger to the safety and well-being of the public. The State of New York has made clear that it finds the activities of a real estate broker as so significant as to require special licensure, regulation, and oversight. The purpose of RPL § 440-a is to ensure "that standards of competency, honesty and professionalism are observed by real estate brokers and salesmen." *2 Park Ave. Assocs. v. Cross & Brown Co.*, 36 N.Y.2d 286 (1975). Moreover, licensing serves to "protect dealers in real estate from unlicensed persons who acted as brokers, and to protect the public from inept, inexperienced or dishonest persons who might perpetrate or aid in the perpetration of frauds

upon it, and to establish protective or qualifying standards to that end." *Dodge v. Richmond*, 5 A.D.2d 593, 595 (1st Dep't 1958). New York has noted that GBL § 349 has the same purpose as requiring real estate brokers to be licensed. *See Oswego Laborers'*, 85 N.Y.2d at 25 ("Consumers have the right to an honest market place where trust prevails between buyer and seller.").

Airbnb has been able (and continues) to deceive consumers into using its services and paying commissions without the protections of New York licensing law, ethical requirements, and regulatory compliance afforded by licensed real estate brokers. Airbnb not only flouts these laws and rules but acts in many ways strictly prohibited by the same. For instance, Airbnb engages in self-interested transactions, fails to avoid conflicts of interest, and fails to provide requisite disclosures and obtain appropriate waivers. AC ¶¶ 8, 42, 46. Without appropriate declaratory and injunctive relief, Airbnb will continue to harm the public in this manner, harm law abiding real estate practitioners (financially, reputationally, and professionally), and interfere with New York's regulation and oversight of the real estate marketplace.

Defendant is incorrect in stating that the purpose of RPL § 440 is "not to protect other brokers." Def. Mem. at 2. This is a myopic view of licensing laws which, by logical inference also serve to protect the interests of other licensees who have a stake in protecting their revenue and the integrity of their profession. For example, New York state law prohibits licensed real estate brokers from splitting commissions with those that are unlicensed. RPL § 442. The court in *Vin Clair v. Kall & Kall, Inc.* explained that the purpose of this is "to prevent persons not entitled to act as brokers or salesmen from deriving profit from the pretense that they were such." 23 Misc. 2d 568, 571 (Dist. Ct. 1960) *quoting* 1929 N.Y. Op. Att'y Gen. 135. Here, Airbnb does exactly that, deriving profit from the pretense they are conducting business legally.

Licensed real estate brokers also have a vested interest in protecting the integrity of their profession from unlawful encroachment. Such an interest was expressed by the New York Court of Appeal in case of *Roman v. Lobe,* 243 N.Y. 51, 54 (1926), wherein Judge Cardozo explained that "[t]he real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains." *See also Bendell v. De Dominicis*, 251 N.Y. 305, 310 (1929) ("One purpose of the statute was to mark off the business of the broker as distinct from occupations which by general acquiescence are pursued of common right without regulation or restriction, and to make illegal the acts of the unlicensed in the real estate broker's field.")(internal citations omitted).

The dedication to maintaining the integrity of real-estate brokers is also self-evident in the profession's code of ethics, requirements for continuing education, and its goal of not just "Respect for the Public," but also "Respect for Peers." Professional Standards, New York State Association of REALTORS, http://www.nysar.com/top-navigation/professional-standards (last visited Mar. 3, 2017).   Here, Plaintiff sufficiently alleges that it has a vested interest in maintaining the integrity of its profession and the commissions it is entitled to. AC ¶ 49.

### C.  Plaintiff States Claims for Which Relief may be Granted

In addition to its motion under Rule 12(b)(1), which was permitted by the Court, Airbnb moves to dismiss for failure to state a claim under Rule 12(b)(6), which was not specifically authorized by the Court.[4] Rather than asking the Court to hold this portion of Defendant's motion

---

[4]    *See* hearing transcript of proceedings held on December 20, 2016. Upon considering whether it could proceed with Plaintiff's motion for summary judgment in light of Defendant's anticipated challenge to Article III standing, the Court stated: "So I think on that issue I don't think it's ripe yet, frankly. I think we will deal initially with the jurisdictional issue and we'll set a briefing schedule on that." Trans., p. 8, lines 4-5. When asked whether Plaintiff could serve only a Request to Admit, the Court stated: No, we're going to stay it all.  If there's no jurisdiction, you're not entitled to get any admission.  So let me put it this way,

in abeyance, it is respectfully requested that the Court also consider Plaintiff's motion for summary judgment (assuming the Court finds that subject matter jurisdiction exists and that Plaintiff's claims have been stated sufficiently). As fully set forth in Plaintiff's Motion for Summary Judgment (Dkt. No. 5), there is more than sufficient uncontested (and uncontestable) facts and evidence to decide the issue of whether Airbnb is a real estate broker as a matter of law. Alternatively (or in addition), Plaintiff renews its request to serve a Request for Admission on Airbnb.

With regard to the sufficiency of Plaintiff's pleading, it is well settled that "the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor." *Harper v. N.Y. City Hous. Auth.*, 673 F. Supp. 2d 174, 178 (S.D.N.Y. 2009). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007).

### 1. Plaintiff States a Claim for Unfair Competition Under New York Common Law

"[T]he essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d at 34 (internal quotations omitted).  In an action for equitable relief, as is the case

---

even if you were to serve them, I would stay the response until such time as I decide the motion.  So rather than have you go through the  exercise of doing it, obviously you can prepare whatever you like, but ***we're going proceed with the jurisdictional motion first***." Trans., p. 11, lines 8-15 (emphasis added).

here, a plaintiff need only show "a likelihood of confusion" between the services of the plaintiff and defendant. *Id.* at 35.

Unfair competition is a broad doctrine that encompasses "any form of commercial immorality." *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 796 (Sup. Ct., N.Y. County 1950), *aff'd,* 279 A.D. 632 (1st Dep't 1951); *see Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (discussing "the 'incalculable variety' of illegal practices falling within the unfair competition rubric). A valid claim for unfair competition alleges the "misappropriati(ng) for the commercial advantage of one person ... a benefit or 'property' right belonging to another." *Metropolitan Opera*, 199 Misc. at 793.

Defendant asserts that the Amended Complaint lacks any allegations of how Airbnb resembles Plaintiff. Def. Mem. at 1. This is hardly so. Indeed, the Amended Complaint lays out in great detail how Airbnb actively engages in activity bringing it squarely within either of the alternate legal definitions of a "real estate broker" under RPL § 440(1). As alleged in the Amended Complaint, Airbnb's is involved in virtually all aspects of facilitating and completing rental transactions involving New York properties on its platform, including the collection of rent and obtaining fees and commissions for its services. AC ¶ 40. Further, the Amended Complaint sets forth the fact that "Parker Madison Partner's president, Samuel Irlander, holds a brokers' license in his own name, and Parker Madison Partners serves as his brokerage." AC ¶ 16. Therefore, despite the fact that Plaintiff and members of the class are licensed real estate brokers and Airbnb is not, both parties engage in the activity described in RPL § 440(1).

As described in the Amended Complaint and herein, Airbnb is exploiting a marketplace and misappropriating Plaintiff's customer base and potential revenue by acting in a deceptive

manner and insulating itself from regulation and oversight. AC ¶ 45. In the State of New York, a real estate broker's license is required for anyone facilitating, for a fee, the rental of real property. This is precisely what Airbnb does yet, despite the plain language of RPL § 440, *et seq.*, decades of case law precedent, and several New York Attorney General Opinions, Airbnb has failed, and continues to refuse, to procure a real estate broker's license in New York. Airbnb does not deny this fact.

Airbnb has gained an unfair commercial advantage over Plaintiff and members of the class by operating a business in a space reserved licensed brokers. "Real Property Law § 442–d bars an unlicensed person from recovering commissions if that person has performed services facilitating, *inter alia*, the sale of real property." *Kavian v. Vernah Homes Co.*, 29 A.D.3d 649, 650 (2d Dep't 2005). Airbnb's success in this marketplace is a direct result of it acting outside the law, placing it on unequal footing with Plaintiff and members of the class while competing for the same customers and commissions.

In its Terms of Service, Airbnb specifically disclaims that it is a real estate broker and suggests that this pronouncement carries some weight. Def. Mem. at 17.  However, the opposite is true. First, RPL § 440, *et seq.* makes no exception for self-serving disclaimers to relieve those clearly falling within its terms of licensing and regulatory compliance. And, second, the disclaimer demonstrates active deception on the part of Airbnb whose real estate broker conduct falls undeniably within the purview of RPL § 440, *et seq.* In fact, this is worse than the material omission Airbnb is guilty of because an implausible denial of this sort is essentially an admission of the deception. Stated otherwise, Airbnb deprives itself of the defense of ignorance because it must have understood what a "broker" was in order to deny being one.

Because Airbnb's deception facilitates its exploitation of the marketplace, causing confusion to consumers (who both should seek out and are entitled to the benefits and protections of licensed real estate brokers), and diverts significant business from lawful real estate practitioners (like the Plaintiff and members of the class), the Amended Complaint sufficiently sets forth a claim for unfair competition.

### 2.   Plaintiff States a Claim for Violations of GBL § 349

To state a claim under GBL § 349, "a party must allege that its adversary has engaged in consumer-oriented conduct that is materially misleading, and that the party suffered injury as a result of the allegedly deceptive act or practice." *Yellow Book Sales & Distribution Co. v. Hillside Van Lines, Inc.*, 98 A.D.3d 663, 664-65 (2d Dep't 2012). New York defines materially misleading conduct as that which is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers'*, 85 N.Y.2d at 26.

As alleged in the Amended Complaint and argued repeatedly herein, Airbnb's conduct is likely to mislead a reasonable consumer into believing that it is lawfully collecting commissions and serving as a facilitator of rental transactions despite unambiguous law to the contrary. It is therefore ironic that Defendant would argue that its TOS disclaimer of being a broker would lead a reasonable consumer to know it is not a licensed real estate broker when the disclaimer is, in fact, direct evidence of deception.  Despite engaging in clearly-defined real estate broker activity, Airbnb's disclaimer further misleads consumers into believing that Airbnb does not need to comply with New York law and that Airbnb is entitled to receive commissions.

Defendant incorrectly claims that *Serrano v. Cablevision Sys. Corp.* applies. In *Serrano*, the plaintiffs brought an action against their internet provider that made allegedly unauthorized limitations to their bandwidth despite making claims that their internet service had "blazing fast

speed" and was "up to 5x faster than phone company High Speed Internet." 863 F. Supp. 2d 157, 162 (E.D.N.Y. 2012). However, the court found that the representations made by defendant were not deceptive because its "discretionary restriction of bandwidth or suspension of internet service—was fully disclosed in the Terms of Service and Acceptable Use Policy." *Id.* at 167. Plaintiff's case differs dramatically from *Serrano* because the disclaimer in Airbnb's TOS is demonstrably false.

### 3. Plaintiff's Claims Arise From Defendant's Unfair Competition Through Misrepresentations to Consumers

Defendant mischaracterizes Plaintiff's claim as "merely alleging that a statute has been violated." Def. Mem. at 12. This is incorrect. The claim is not that Airbnb is violating RPL § 440 but rather that Airbnb is engaging in unfair competition with Plaintiff and other licensed brokers by deceiving (and diverting) consumers. This deception allows Airbnb to exploit a commercial arena is has no business being in and gain an unfair competitive advantage over Plaintiff and other licensed real estate brokers by engaging in unregulated conduct (a troubling degree of which even licensed brokers are prohibited from).

Defendant is incorrect in arguing that *Conboy v. AT & T Corp.*, 84 F. Supp. 2d 492 (S.D.N.Y. 2000), is applicable. There, the plaintiffs claimed that defendant violated GBL § 601(6), however, because GBL § 601(6) does not have a private right of action, plaintiffs asserted that at "a violation of that statute necessarily constitutes a deceptive act under Section 349." *Id.* at 506). On appeal, the Second Circuit rejected the argument, noting that "Plaintiffs have not alleged any facts to suggest that UCS misled them; they also have not identified any statement made during any of UCS's telephone calls that was false or deceptive." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). Notably, the lower court stated that not all claims alleging violations of statutes without private rights of action fail to state a claim under GBL §

349. *See* 84 F. Supp. 2d at 506 ("other violations of Section 601 may be sufficiently deceptive to constitute a claim under Section 349"). Here, Airbnb deceived customers by explicitly stating it was not a real-estate broker despite clearing acting in that capacity.

Finally, Defendant incorrectly asserts that *Trieber v. Aspen Dental Management, Inc.*, as discussed above, is substantially similar to this matter. There, the court granted a motion to dismiss plaintiffs' claims under GBL § 349, because plaintiffs (*i.e.*, patients of Aspen Dental) failed to "allege a distinct injury attributable to defendants' deceptive representations." *Trieber*, 635 F.App'x at *3. Here, unlike the plaintiffs in *Trieber* (*i.e.,* consumers), Plaintiff (*i.e.,* a competitor) alleges that it suffered harm (financial and otherwise) as a result of Defendant's misrepresentations. Specifically, Plaintiff alleges that were it not for Defendant's ability to operate freely and unrestrictedly in the real estate market, consumers would not have directed their business (hundreds of millions of dollars' worth) away from licensed real-estate brokers such as Plaintiff, and other members of the class. AC ¶ 60.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss as to Rule 12(b)(1) be denied, and, if the Court considers and denies Defendant's request for dismissal as to Rule 12(b)(6), that it also consider Plaintiff's earlier-filed motion for summary judgment, and/or permit Plaintiff to proceed with discovery, and  for such other and further relief as is proper under the circumstances.

DATED: March 3, 2017

Respectfully submitted,

**NEWMAN FERRARA LLP**


By:   _s/ Jeffrey M. Norton_
        Lucas A. Ferrara
        Jeffrey M. Norton
1250 Broadway, 27th Fl.
New York, NY 10001
(212) 619-5400
lferrara@nfllp.com
jnorton@nfllp.com

*Counsel for Plaintiff*
*and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 3, 2017, I electronically filed the foregoing Plaintiff's Memorandum of Law in Opposition to Airbnb, Inc.'s Motion to Dismiss with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

         _s/ Jeffrey M. Norton_
         JEFFREY M. NORTON