USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/29/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PARKER MADISON PARTNERS,
individually and on behalf of all others
similarly situated,

                               Plaintiff,          16-CV-8939 (VSB)

          - against -             **MEMORANDUM & OPINION**

AIRBNB, INC.,

                              Defendant
------------------------------------------------------------X

Appearances:

Jeffrey M. Norton
Roger A. Sachar, Jr.
Newman Ferrara LLP
New York, New York
*Counsel for Plaintiff*

Roberta A. Kaplan
John C. Quinn
Kaplan & Company, LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Parker Madison Partners brings this putative class action on behalf of itself and a class of licensed real estate brokers seeking injunctive and declaratory relief preventing Defendant Airbnb from engaging in alleged unfair competition and conduct violating section 349 of the New York General Business Law ("GBL") by virtue of providing real estate brokerage services in New York without the licenses mandated by the New York Real Property Law ("RPL"). (Doc. 18.) Before me is Defendant Airbnb's motion to dismiss the Amended Complaint. (Doc. 23.) Because I find that Plaintiff lacks Article III standing to pursue its

claims, Defendant's motion to dismiss is GRANTED.

I. **Background**[1]

Airbnb was founded in 2008 and is a "marketplace for people to list, discover, and book unique accommodations around the world – online or from a mobile phone or tablet." (Am. Compl. ¶ 32.)[2] Airbnb facilitates approximately 25,000 rental transactions per day in New York City. (*Id.* ¶ 33.) Those who are members of Airbnb can either list and rent their properties ("Hosts") or find properties to rent ("Guests"). (*Id.* ¶¶ 4, 34.) Plaintiff and the purported class it seeks to represent are licensed real estate brokers and real estate brokerage companies in the State of New York. (*Id.* ¶¶ 2, 8.) Airbnb is not a licensed real estate broker, but provides services such as listing and advertising rentals, and regulating and controlling an online forum through which its members must conduct their communications and negotiations. (*Id.* ¶¶ 3, 7, 39, 41.) Airbnb members have to agree to its term of service ("TOS"), and Airbnb (1) requires Guests to agree to permit Airbnb to handle the rental funds, (2) requires members to agree to give Airbnb absolute discretion to resolve disputes between its members, (3) offers Hosts the option of allowing Airbnb to set the prices of their rentals, (4) makes a free-of-charge photographer available to take pictures of Host properties, and (5) purchases outside advertising to promote its website. (*Id.* ¶ 39.) Furthermore, Airbnb's TOS advises visitors to its website that Airbnb is not a "real estate broker." (*Id.* ¶ 44.)

Airbnb also processes rental payments and takes a percentage of the payment as a fee and/or commission from the Hosts and Guests. (*Id.* ¶ 4.) Specifically, Airbnb charges Hosts

---

[1] The following facts are taken from the amended complaint and are assumed to be true for purposes of this motion. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). However, my references to the factual allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to the Amended Class Action Complaint filed on December 26, 2016 (the "Amended Complaint"). (Doc. 18.)

2

three percent of the rental payments received, and processes that percentage prior to distributing the balance of the payments to the Hosts. (*Id.* ¶¶ 35–36.) Airbnb also charges Guests a commission. (*Id.* ¶ 37.) Airbnb does not disclose the precise percentage of those commissions, but rather states that they fall somewhere between six percent and twelve percent of the rental contract. (*Id.* ¶ 38.)

Airbnb does not avoid conflicts of interest and does not provide the standard disclosures and waivers provided by real estate brokers. (*Id.* ¶¶ 8, 42, 46.) Plaintiff claims that as a result, "licensed brokers . . . are harmed by a massive-scale market competitor that performs real estate brokerage services without a license and without oversight." (*Id.* ¶ 9.) Plaintiff states that it and the putative class "have an interest in not being subject to competition in a commercial arena reserved exclusively for licensed brokers, and in maintaining the integrity of the licensed real estate broker profession." (*Id.* ¶ 10.) Plaintiff further claims that by not following the RPL, "Airbnb takes unfair advantage of the real estate rental market and the consumers who are entitled to the protections afforded by licensed and regulated real estate brokers," and that allowing Airbnb to continue operating in this way "will have severe repercussions for the commercial space reserved for licensed real estate brokers and render the protections of [the RPL] meaningless." (*Id.* ¶¶ 48–49.)

## II. **Procedural History**

On November 17, 2016, Plaintiff filed this action, (Doc. 1), as well as a statement of relatedness, (Doc. 3), and on November 29, 2017, the case was accepted as related to a matter pending before me. (Dkt. Entry Nov. 29, 2017). Soon after the case was assigned to my docket, on December 7, 2016, Plaintiff filed a motion for summary judgment. (Doc. 4.) Defendant filed a letter addressing Plaintiff's motion for summary judgment on December 8, 2016, (Doc. 10),

and Plaintiff responded later that same day, (Doc. 11). I directed the parties to appear for a conference, (Doc. 12), which was held on December 20, 2016. During the conference, after Defendant expressed its desire to file a motion to dismiss for lack of subject matter jurisdiction based on a lack of standing, I noted—and Plaintiff's counsel agreed—that if I do not have jurisdiction I would not "reach the summary judgment issue." (Doc. 21 at 4:2-13). Based upon my discussion with counsel at the conference, I stayed briefing on the summary judgment motion, stayed discovery, and set a briefing schedule for Defendant's motion to dismiss. (*Id.* at 11:8-12:18.)

Plaintiff then filed an amended putative class action complaint on December 26, 2016. (Doc. 18.) Thereafter, in accordance with the briefing schedule set at the December 20 conference, Defendant submitted its motion to dismiss on January 31, 2017, (Doc. 23), along with accompanying papers, (Docs. 24–25), Plaintiff submitted its opposition on March 3, 2017, (Doc. 26), and Defendant submitted a reply on March 17, 2017, (Doc. 27). Plaintiff further filed a letter motion for leave to file a sur-reply, (Doc. 28), which I denied, (Doc. 30).

### III. <u>Legal Standard</u>

#### A. *Rule 12(b)(1)*

A claim may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Unlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise have a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citations omitted). In deciding a Rule 12(b)(1) motion to dismiss, "the district court must take all uncontroverted facts in the

complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). Furthermore, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id*.

### B. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss brought under Rule 12(b)(6), a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*,

556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## IV. Discussion

Defendant proffers a number of arguments in support of its motion to dismiss, including that Plaintiff lacks Article III standing to proceed with this action. (*See* Def.'s Mem. 11–15.)[3] Defendant also contends that Plaintiff lacks "statutory standing" to bring its two causes of action—claims brought under GBL § 349 and the New York common law for unfair competition—and that Plaintiff fails to state a claim for which relief can be granted. (*See id.* 7–11, 15–20.) Because "standing is a threshold matter [that a court] must resolve before reaching the merits," *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (internal quotation marks and citation omitted), I begin my analysis with Article III standing.[4]

### A. *Article III Standing*

#### 1. Applicable Law

Article III of the Constitution circumscribes a court's authority to hear cases, limiting the jurisdiction of federal courts to "cases" or "controversies." U.S. Const. art. III, § 2. To meet the minimum constitutional threshold, a plaintiff must establish "first, that it has sustained an 'injury in fact' . . . ; second, that the injury was in some sense caused by the opponent's action or omission; and finally, that a favorable resolution of the case is 'likely' to redress the injury." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.Á.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015)

---

[3] "Def.'s Mem." refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss. (Doc. 24.)

[4] As the Supreme Court recently clarified, what has been dubbed "statutory standing" and previously "prudential standing" is a misnomer, as the true question is whether there is an "absence of a valid (as opposed to arguable) cause of action [that] does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 & n.4 (2014). Rather, the real question for purposes of the previously-called "statutory standing" is "whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc.*, 134 S. Ct. at 1387).

6

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks and citation omitted).  The plaintiff "bears the burden of establishing these elements" and "[w]here . . . a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Injury-in-fact is the "first and foremost" of the three standing elements.  *Id.* (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)).  To establish this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).  To be "particularized," an injury "must affect the plaintiff in a personal and individual way."  *Id.*  To be "concrete," an injury "must actually exist."  *Id.*  However, "concrete" is "not . . . necessarily synonymous with 'tangible,'" and intangible harms may, in some circumstances, satisfy the concreteness requirement.  *Id.* at 1549.  Additionally, although a "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact."  *Id.*  When deciding whether a violation of a procedural right granted by statute constitutes an injury-in-fact, a court should consider "whether the particular procedural violations alleged . . . entail a degree of risk sufficient to meet the concreteness requirement."  *Id.* at 1550.

7

## 2. Application

Upon examining the allegations in Plaintiff's Amended Complaint, it is clear that Plaintiff does not allege any actual injury tied to Airbnb's actions. Rather, Plaintiff's allegations consist of conclusory statements and untethered assertions culminating in the claim that Airbnb's continued operation would have "severe repercussions to the commercial space reserved for licensed real estate brokers and render the protections of RPL § 440, et seq. meaningless." (Am. Compl. ¶ 48.)

Specifically, Plaintiff alleges that: (1) "licensed brokers . . . are harmed by a massive scale market competitor that performs real estate brokerage services without a license and without oversight," (*id.* ¶ 9); (2) Plaintiff and the putative class "will continue to suffer harm to their business interests and to the integrity of the licensed real estate broker industry," (*id.* ¶ 55); and (3) Plaintiff and the putative class have an "interest" both in "protecting their business interests and customer base," (*id.* ¶ 54), and "in not being subject to competition in a commercial arena reserved exclusively for licensed brokers and in maintaining the integrity of the licensed real estate broker profession," (*id.* ¶ 10). These conclusory statements are insufficient to establish injury-in-fact. *See Robainas v. Metro. Life Ins. Co.*, No. 14CV9926 (DLC), 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015) (finding plaintiff had not demonstrated concrete injury where allegations were that they purchased riskier insurance policies and noting "conclusory allegations of current risk do not suffice to confer Article III standing" (citation omitted)), *aff'd sub nom. Ross v. AXA Equitable Life Ins. Co.*, 680 F. App'x 41 (2d Cir. 2017).

The most specific allegation contained in Plaintiff's Amended Complaint related to any purported injury is found in Count II, where Plaintiff claims that: "As a result of Airbnb's conduct, Plaintiff and the putative class have suffered, and will continue to suffer, damage to

their business, including but not limited to substantial lost revenues, threats to their industry and the professional standards thereof, and abrogation of the importance of licensing and regulatory compliance." (Am. Compl. ¶ 60.) Plaintiff's general allegations of "damage to their business," "threats to their industry and the professional standards" of that industry, and "substantial lost revenues"—not directly tied to injury suffered by Plaintiff—do not establish any cognizable injury as they do "not include a single example" or give any details whatsoever as to any actual injury to Plaintiff connected to Airbnb's activities. *See Treiber v. Aspen Dental Mgmt., Inc.*, 94 F. Supp. 3d 353, 363 (N.D.N.Y. 2015) (noting that the complaint did "not state what particular services or goods were allegedly overpriced, what billed services were allegedly not provided, or what products and services were allegedly provided without consent or authorization," but rather "simply allege[d] that these are inevitable consequences of [defendant's] business model"), *aff'd*, 634 F. App'x 1 (2d Cir. 2016). In fact, as Defendant points out in its brief, there are no allegations in the Amended Complaint concerning any current or potential clients that have been lost to Airbnb, nor are there even claims stating that Plaintiff operates in the same market as Airbnb, let alone any allegations revealing how Plaintiff competes with Airbnb. (*See* Def.'s Mem. 9 & n.5.) *See Robainas*, 2015 WL 5918200, at *6 (noting that "[p]laintiffs do not allege that they would have purchased policies . . . but for its nondisclosures" (citation omitted)).

In its opposition, Plaintiff does not respond or address these points, or in any way offer how it has been actually injured by Airbnb's actions. The fact that Plaintiff—despite having the opportunity to do so—fails to point to any specific fact supporting its injury or to connect that purported injury to the members of the putative class it seeks to represent is fatal to Plaintiff's claims. Indeed, Plaintiff's failure to point to any such facts is particularly telling given that Airbnb has been in business since 2008, and one would expect that if, in fact, Plaintiff suffered

9

harm, it would be able to articulate that harm with a modicum of detail.

Ultimately, any alleged "injury" derives solely from Airbnb's purported violation of the RPL by acting as a real estate broker without procuring the proper license. (*See, e.g.*, Am. Compl. ¶¶ 2–3, 5–10.) In other words, Plaintiff does not point to specific improper acts of Defendant that have caused actual harm to it or its customers other than the alleged violation of the RPL. However, Plaintiff cannot establish a cognizable injury based solely on an alleged statutory violation, particularly a practice that "'is not inherently [problematic] but becomes problematic only' because it [allegedly] violates a 'provision of New York law.'" *Treiber*, 636 F. App'x at 3 (quoting *Schlessinger v. Valspar Corp.*, 723 F.3d 396, 399 (2d Cir. 2013)); *see also Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."). In fact, as Defendant notes, the RPL—like the proscribed corporate practice of medicine in *Treiber*, 636 F. App'x at 3—does not even "afford[ ] [any] enforcement rights" to Plaintiff. (*See* Def.'s Mem. 14 ("[T]he Real Property Law was not intended to protect real estate brokers. . . .").)

Plaintiff has not established an injury-in-fact that was caused by Airbnb's actions sufficient to support Article III standing. Therefore, Defendant's motion to dismiss the Amended Complaint is granted.

**B.**   *Failure to State a Claim*

Because I find that Plaintiff lacks standing to pursue its claims, I do not reach Defendant's arguments under Rule 12(b)(6), nor do I reach its "statutory standing" arguments. *See Kelen v. Nordstrom, Inc.*, No. 16 Civ. 1617 (PAE), 2016 WL 7373807, at *6 (S.D.N.Y. Dec. 16, 2016) ("[B]ecause the Court has held that [plaintiff] lacks standing to pursue her claims, so as to require dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court has

no occasion to reach [defendant's] arguments under Rule 12(b)(6).").

## V. Conclusion

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint for lack of Article III standing is GRANTED. The Clerk of Court is directed to terminate the open motion at Document 23 and close this case.

SO ORDERED.

Dated: September 29, 2017
New York, New York

Vernon S. Broderick
United States District Judge